[No. 43004.    En Banc.    December 19, 1974.]

CHERYLE PIERCE et al., *Appellants*, v. LAKE STEVENS SCHOOL DISTRICT No. 4 et al., *Respondents*.

*W. Mitchell Cogdill* (of *Cogdill & Deno*), for appellants.

*Bell, Ingram, Johnson & Level,* by *W. F. Ingram* and *E. E. Level,* for respondents.

*Roberts, Shefelman, Lawrence, Gay & Moch,* by *George M. Mack* and *David A. Bennett,* and *Kane, Vandeberg & Hartinger,* by *Elvin J. Vandeberg* and *Leslie O. Stomsvik,* amici curiae.

ROSELLINI, J.—Upon the failure of three special school levies, the Lake Stevens School District No. 4 determined that it would have to curtail programs and reduce personnel. The Lake Stevens Educational Association, as employee representative, was asked to participate in formulation of criteria for reduction of certificated employees but refused, taking the position that there should be no reduction. The board adopted the following criteria, which had at an earlier time been suggested by the association:

1. That the school district retain as many of the certificated staff as possible under a curtailed program.

2. That the school district determine the total number of certificated staff leaving the district for reasons of: retirement, family transfer, normal resignations, discharge or nonrenewal, etc., and that these vacancies be filled from the existing staff insofar as possible.

3. That the determination of those teachers to be retained (over and above 1-2 listed above) be made primarily on the basis of those qualified to conduct the reduced educational program.

4. That vacant positions be filled by those fully certificated teachers within the district who have adequate academic preparation and experience fitted to that particular assignment or who may attain adequate preparation prior to the opening of school in the fall.

5. That seniority be the determining factor when program considerations appear equal.

6. That within the above framework the building principals shall consider the following human factors: age, home, special problems, etc.

These criteria were transmitted to the school administrative staff, who were told to select 27 teachers to be nonrenewed upon the basis of the criteria. This was done, and after considering the recommendations of the administration, the board approved their selections. A notice of nonrenewal was sent prior to April 15, 1972, as required by RCW 28A.67.070. The notice read:

Dear . . .

As an educator in Lake Stevens School District No. 4, we know you are painfully aware of the failure of the special levy for the support of the educational program of the Lake Stevens Public Schools. The failure of this levy has resulted in an insufficiency of funds to carry on the educational program in the public schools as said program was conducted in the school year 1971-72.

We regret to inform you that the School Board is, therefore, confronted with an emergency situation and, as a result, has had to budget for a reduced educational program for the ensuing year, 1972-73. This has, of course, resulted in determination by the Board in the reduction of teacher positions.

Lake Stevens School District No. 4, Lake Stevens, Washington, will not be able to continue your employment for the 1972-73 school year and your employment contract with the District will not be renewed for said ensuing school term.

We regret the necessity of this decision, which is made necessary by lack of necessary funds to provide for continuing your position.

> Yours very truly,
> LAKE STEVENS SCHOOL DISTRICT No. 4
> By Franz M. Suhadolnik
> President of the Board of Education

Eighteen of the teachers whose contracts were not renewed, electing to appeal directly to the court under RCW 28A.58.515, rather than to petition the board of directors for a hearing as provided in RCW 28A.67.070, brought this action in Superior Court, where they were represented by attorneys for the Lake Stevens Education Association. Attorneys for the Washington Education Association have filed an amicus brief supportive of the appellants' position on this appeal from the trial court's determination that no rights of the teachers were violated and that the procedure of the board was in conformity with the law. An amicus brief supportive of the trial court's decision has been filed by a Tacoma law firm which represents school districts.

The first contention of the appellants is that the notices which they received did not meet the requirements of due process. Contending that an adequate notice must set forth in detail the reasons for nonrenewal, they cite *Goldberg v. Kelly*, 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011 (1970). The Supreme Court in that case held that the interest of an eligible recipient of public assistance in the uninterrupted receipt of such assistance, which provided him with essential food, clothing, housing and medical care, coupled with the State's interest that payments not be erroneously terminated, outweighed the State's competing concern to prevent any increase in its fiscal and administrative burdens, and that consequently a pretermination evidentiary hearing was necessary to provide the recipient with procedural due process. The court held that while the hearing need not take the form of a judicial or quasi-judicial trial, the recipient must be provided with timely and adequate notice detailing the reasons for termination and an effective opportunity to defend by confronting adverse witnesses and presenting his own evidence and arguments before the decisionmaker.

Patently, that case did not concern a question of nonrenewal of teachers' contracts. The court recognized that not all governmental benefits are subject to the requirement of a pretermination evidentiary hearing.

The United States Supreme Court has since had before it a case involving the claim of a nontenured teacher that he was entitled to a statement of reasons and a hearing thereon if his contract was proposed to be nonrenewed, as an element of due process. *Board of Regents v. Roth*, 408 U.S. 564, 573, 577-78, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972). The majority opinion in that case, delivered by Mr. Justice Stewart, held that only the deprivation of interests encompassed in the Fourteenth Amendment's protection of liberty and property are subject to the requirements of procedural due process. The respondent in that case did not have a "liberty" interest in reemployment because

[t]he State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community.

. . .

. . . . [nor had the state] imposed on him . . . [any] other disability that foreclosed his freedom to take advantage of other employment opportunities.

The court said that the respondent in that case did not have a "property" interest in reemployment because

[t]o have a property interest in a benefit, a person . . . must . . . have a legitimate claim of entitlement to it.

. . .

. . . . [T]he terms of the respondent's [contract] secured absolutely . . . no possible claim of entitlement to re-employment.

In a companion case decided on the same day as *Roth*, *Perry v. Sindermann*, 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972), the scope of the *Roth* decision was clarified. Sindermann had been employed in the Texas college and university system, which had no formal tenure policy, for a period of 10 years, the last 4 of which were under annual contracts at Odessa Junior College. The regents then declined to renew his contract for the following year, without giving him a statement of reasons for the action. The respondent alleged that the nonrenewal was in retaliation for his public criticism of the college administration,

and he claimed an expectancy in reemployment based on the de facto tenure policy officially promulgated by the college.

The United States Supreme Court said that if Sindermann could prove his allegation that a de facto tenure system had been adopted, the college officials would be obligated to grant a hearing at his request, where he could be informed of the grounds for his nonretention and could challenge their sufficiency. Thus it is apparent that the Supreme Court of the United States has not held that a nontenured or a tenured teacher must be given a detailed statement of the reasons for his nonrenewal when he is notified of the intention not to renew his contract. It has, however, held that a tenured teacher is entitled to a hearing at which he can be informed of the reasons.

RCW 28A.67.070 provides that a contract of a certificated employee shall be limited to a term of not more than 1 year. However, the certificated employee's contract is automatically renewed for a year under the act if he is not notified in writing on or before April 15 of the board of directors' determination that there is probable cause that the employment contract should not be renewed. The statute provides that the notification shall specify the cause or causes for nonrenewal of contract. The employee is entitled to request a hearing or he may appeal directly to the court under RCW 28A.58.460. The procedural requirements of due process as laid down by the Supreme Court in the cited cases are met by these statutes. Under the doctrine of the *Sindermann* case, it is not necessary, even where the teacher has tenure, to detail the reasons for his nonrenewal in the notice of termination, if these reasons are made known to him upon his request and he is given an opportunity to present evidence and dispute the propriety of the determination.

The notice which was sent to the appellants in this action advised them that the reason for the nonrenewal of their contracts was curtailment of the educational program due

to insufficient funds. They take the position on appeal that they should have been further advised of the criteria and the reasons why they, rather than others, were selected for nonrenewal. The appellants' attorney argued before the trial court that giving any notice of nonrenewal was detrimental to the teacher, and that a better system would be to allow him to resign as an alternative to receiving a notice which would become a part of his record and would reflect discredit on him. It would seem that the omission of any reference to the selective process or the criteria used in the notices of nonrenewal represented an endeavor on the part of the school authorities to be as considerate as possible of the teacher's interest in having his record free of statements that might be deemed to be derogatory. In any event there is no showing that the appellants were prejudiced in any respect by the failure to formally advise them of the criteria used in selecting those teachers who would be nonrenewed or the reasons why they, rather than others, were selected for nonrenewal. The hearing before the trial court in this case was de novo (*Hattrick v. North Kitsap School Dist. 400*, 81 Wn.2d 668, 504 P.2d 302 (1972)) and it is not denied that the appellants were given a full opportunity to contest the application of the criteria to them.

We do not think it was the intent of the legislature to require that the application of each element of the criteria for nonrenewal be detailed in the notice. Such a notice would clearly be impractical and unnecessary. In *Robel v. Highline Pub. Schools, Dist. 401*, 65 Wn.2d 477, 479, 398 P.2d 1 (1965), a notice was sent to a teacher specifying as the reason for the proposed nonrenewal that "a recommendation made by your principal to the effect that your teaching has been unsatisfactory," and "that repeated conferences with you have failed to bring about the desired improvement." In ruling whether there was sufficient cause stated in the notice, we adopted a functional approach and indicated that the unsatisfactory character of Robel's teaching had been communicated to her prior to receiving the

notice and noted that the issues in controversy were thus rather clearly drawn.

In *State ex rel. Bohanon v. Wanamaker*, 47 Wn.2d 794, 289 P.2d 697 (1955), we held that where an employee was told he would receive a 1-year nonrenewable contract and later was sent a letter confirming that there was no change in the situation, he had been adequately informed of the fact of his nonrenewal. We also held that the basis of the nonrenewal was adequately communicated when he was told that though much of his work was adequate, improvement was necessary and this could be accomplished in the board's opinion only by replacement of the employee. *And see Peters v. South Kitsap School Dist. 402*, 8 Wn. App. 809, 509 P.2d 67 (1973), holding that a notice of probable cause which specifies as the cause of nonrenewal the financial condition of the district is sufficient to meet due process.

*Thayer v. Anacortes School Dist.*, 81 Wn.2d 709, 504 P.2d 1130 (1972), strongly relied upon by the appellants, does not support the proposition that a notice of nonrenewal must give details of criteria used in determining which teachers shall be nonrenewed. We simply held in that case that seniority, being a factor which has properly been found by the legislature to be of great importance in determining the rights of teachers, as evidenced by RCW 28.67.076[1] must reasonably be among those matters considered in determining whether a teacher should be preferred over other equally qualified teachers where nonrenewal of some contracts becomes necessary. We held that a teacher has a right to assume that this important factor will be taken into account and if it is not, the teacher must be so notified so that he may be alerted to take the necessary steps to protect his interest. The case has no application where the fact of seniority has indeed been one of the criteria applied, and particularly where, as here, it has been

---

[1]This section (now RCW 28A.58.100) preserves seniority rights of teachers transferring from one school to another within the state, as well as leave benefits and other benefits.

made the controlling factor where program considerations are equal.

It is suggested that the notices were defective because they were not notices of "probable cause," but reflected a decision not to renew the teachers' contracts. *Foster v. Carson School Dist. 301*, 63 Wn.2d 29, 30, 385 P.2d 367 (1963), is cited and relied upon. The teacher in that case who was employed under a contract for the school year 1961-62 was personally served with a letter on January 12, 1962, stating that at the regular meeting of the board it was unanimously agreed by resolution to discharge him. The letter stated:

"Your dismissal shall be effective immediately, and you are requested to return to Mr. William F. Schelly, Principal of the Carson Elementary School, the keys, class room grade book and class plan book now in your possession."

The applicable statute in that case was RCW 28.58.450, which provides:

Every board of directors determining that there is probable cause for the discharge of a teacher . . . shall notify such employee of its decision, which notification shall specify the probable cause for discharge. Every such employee so notified shall, at his or her request made in writing and filed with the clerk or secretary of the board of directors of the district within ten days after receiving such notice, be granted opportunity for hearing before the board of directors of the district, to determine whether or not there is cause for discharge . . . Any decision to discharge such employee shall be based solely upon the cause for discharge specified in the notice of probable cause to the employee and established by a preponderance of the evidence at the hearing to be sufficient cause for discharge.

In the event such notice and opportunity for hearing is not timely given by the district, . . . such employee shall not be discharged for the duration of his or her contract.

If such employee does not request a hearing as provided herein, such employee shall be discharged.

We held that the notice was not "timely," since the discharge was made effective immediately and therefore no opportunity was afforded for a hearing before it became final.

■ We were there concerned with the discharge statute, which provides for the discharge of an employee during the term of his contract, whereas the nonrenewal statute provides for notice, on or before April 15 of the contract year, that the contract will not be renewed for the year beginning the following September. It is therefore evident that the notice given pursuant to the nonrenewal statute affords ample time for administrative review of the determination prior to the time for contract renewal.

RCW 28A.67.070 makes no provision for a second notice to the employee if the employee does not request a hearing, thus it must have been contemplated that the notice would advise the employee that it was the intention of the district authorities not to renew his contract.

This same question was before the Court of Appeals, Division One, in *Boyle v. Renton School Dist. 403*, 10 Wn. App. 523, 527, 518 P.2d 221 (1974). With respect to this court's reasoning in the *Foster* case, the Court of Appeals quite aptly said:

> The court in *Foster* [*Foster v. Carson School Dist. 301*, 63 Wn.2d 29, 385 P.2d 367 (1963)] was also concerned with the possible unfairness of the hearing before a board which had earlier decided to discharge the teacher. This problem inheres in the procedure of both the discharge and renewal statutes, because the board must make the initial determination to separate the employee and then hear and decide the case. The teachers in the case before us do not challenge this dual role of the board in performing both administrative and quasi-judicial functions, but do object, insofar as the notice is concerned, with the board seeming to have finally decided the nonrenewal at the administrative stage by saying in the notice that it had "determined that your teaching contract . . . will not be renewed."
>
> We do not believe that the statement in the notice by the board established beyond question that its members

had prejudged the case and could not fairly consider the evidence and arguments of the teachers at the hearings. The preliminary determination for nonrenewal was necessarily made by the board upon the information it then had. This information would have to be sufficient to justify the decision to nonrenew because if the teacher did not have countervailing evidence or argument to present to the board at the subsequent hearing, his contract would undoubtedly not be renewed. The board could not justifiably send out notice of nonrenewal if it was then unsure or uncertain that it had sufficient evidence to support it. The initial determination to nonrenew does not mean that the members of the board are prejudiced against the teacher and could not discharge their statutory duty to give him a fair hearing. The presumption is that the board did properly discharge its duties. *Rosso v. State Personnel Bd.*, 68 Wn.2d 16, 411 P.2d 138 (1966).

But assuming that exact compliance with the statute would require the school authorities to refrain from giving notice of anything more than probable cause, we cannot find that appellants in this case were prejudiced by the form of the notice which was served upon them. They availed themselves of the right to appeal to the Superior Court, where the matter was heard de novo before a disinterested tribunal, and the appellants were given full opportunity to demonstrate, if they could, that there was no probable cause for nonrenewal of their contracts. Further, the trial court placed upon the respondents the burden of showing that probable cause had been established. There was substantial evidence to support the trial court's findings. Under the circumstances of this case, the form of the notice did not result in the denial of any right of the appellants.

It is next contended that the board of directors improperly delegated its decisionmaking authority to the administrative staff, including the building principals. It is pointed out that RCW 28A.67.070 places upon the board of directors the responsibility for making the determination that probable cause exists for nonrenewal of a teacher's contract. The appellants rely upon the well-established rule

that where a power is vested in a municipal corporation, it may not be delegated and can be exercised only by the person or persons designated. They cite *State v. Miles*, 5 Wn.2d 322, 105 P.2d 51 (1940); *Northern Pac. Ry. v. Henneford*, 9 Wn.2d 18, 113 P.2d 545 (1941); *State ex rel. West v. Seattle*, 50 Wn.2d 94, 309 P.2d 751 (1957).

■ The *West* case is particularly relied upon. In that case the city charter lodged in the superintendent of lighting the power of removal of employees. The Civil Service Commission promulgated a rule which authorized the superintendent to delegate the power of removal. This court held that the power of an administrative agency to promulgate rules does not include the power to legislate and the rules must be within the framework of the policy laid down in the statute or ordinance. Therefore, we held that the rule authorizing the delegation of the power of removal was pro tanto void. There is in this case no evidence that the board of directors delegated its power to determine that probable cause for nonrenewal existed. Certainly it promulgated no rule to that effect and in fact it exercised its statutory power in acting upon the recommendations of the professional administrators which it employed. The removal was done by formal act of the board as required by law.

In *Ledgering v. State*, 63 Wn.2d 94, 100, 385 P.2d 522 (1963), we recognized that gathering, collating and presenting such facts as may be required by an officer charged with a statutory duty, as well as the making of appropriate recommendations, are without doubt delegable duties. We cited an opinion of the Supreme Court of Wisconsin in *School Dist. 3 v. Callahan*, 237 Wis. 560, 576, 297 N.W. 407, 135 A.L.R. 1081 (1941), as follows:

". . . [T]he rule that requires an executive officer to exercise his own judgment and discretion in making an order of such nature does not preclude him from utilizing, as a matter of practical administrative procedure, the aid of subordinates directed by him to investigate and report the facts and their recommendation in relation to the advisability of the order, and also to draft

it in the first instance. [Citing cases.] It suffices that the judgment and discretion finally exercised and the orders finally made by the superintendent were actually his own; and that there then attaches thereto the presumption of regularity in order to effectuate the intent manifested thereby. . . ."

Not only was it proper for the school directors to utilize and rely upon the services of their administration in determining which teaching positions should be eliminated and which programs should be curtailed to meet the financial crisis, it would appear to be the only practical manner in which they could gather the information necessary to make an intelligent judgment. The appellants have suggested no practical alternative to the method chosen by the school directors and we would be very much surprised if it were not in accord with the universal practice. Statutes should always be given a reasonable construction and we cannot conceive that the legislature intended that school directors should perform the functions of professionals trained in the administration of schools, as well as those of making the policy decisions and final judgments which are required of them by express statutory enactment. We see no reason to read into the act a legislative intent to place such unreasonable restrictions upon the power of the school directors to utilize the services of their administrative employees in reaching the determinations they are required to make.

It is maintained that the failure to compare appellants with all other teachers within the Lake Stevens School District denied them equal protection of the law. The trial court found no merit to this contention, pointing out that the appellants were compared with other teachers who were qualified for the same positions and that it would have been a useless act and a waste of time to compare them with teachers whose talents and training were in different areas and for whose positions the appellants lacked the experience and background. The appellants have cited no authority for the proposition that in determining which teachers shall be nonrenewed when financial neces-

sity requires a reduction of certificated staff, each teacher must be compared with all other teachers in a school district. It is not suggested that any of the appellants is better qualified to hold any teaching position within the district than the teacher who was retained to fill that position. The trial court did not err in rejecting this contention of the appellants.

The appellants next contend that neither program needs nor educational qualifications should be placed above seniority in determining which teachers should be nonrenewed. In short, the appellants suggest that seniority should in every case be the controlling factor. They place great reliance on *Thayer v. Anacortes School Dist.*, 81 Wn.2d 709, 504 P.2d 1130 (1972). That case does not stand for the broad proposition put forth by the appellants. Rather, as the Court of Appeals in *Peters v. South Kitsap School Dist. 402*, 8 Wn. App. 809, 509 P.2d 67 (1973), correctly analyzed the case, it requires that seniority as well as the district's needs and the respective qualifications of teachers must be considered in determining which of two or more teachers qualified for the same position shall be nonrenewed. The criteria used in this case as well as the evidence indicate that seniority was given serious consideration in every instance and that where the district's needs and the qualifications of the teachers were equal, seniority was made the controlling factor.

After the appellants had received their notices of nonrenewal, vacancies occurred within the district and notices were sent to all of the appellants advising them of the vacancies and that they would be given an opportunity to apply for the positions. Four vacancies were filled by persons previously given notice of nonrenewal. None of the appellants responded to the notices. They complain, however, that there existed no adequate criteria for the hiring of teachers to fill the vacancies. Since they did not choose to avail themselves of an opportunity to be considered for these positions, they waived any objection which they

might have to the procedure followed in filling the vacancies.

The objection is raised that the appellants were issued notices of nonrenewal prior to there having been a policy negotiated between the Lake Stevens Education Association and the Board of Directors of the Lake Stevens School District. RCW 28A.72.030 is cited which provides for negotiation by representatives of employee organizations

> to communicate the considered professional judgment of the certificated staff prior to the final adoption by the board of proposed school policies relating to, but not limited to, curriculum, textbook selection, inservice training, student teaching programs, personnel, hiring and assignment practices, leaves of absence, salaries and salary schedules and noninstructional duties.

■ The evidence showed that when it became evident that the successive levy failures were going to force the school district to reduce its personnel, the respondents invited the duly authorized representative of the appellants, the Lake Stevens Education Association, to participate in the effort to determine what criteria should be adopted for the reduction of personnel. The association refused to negotiate upon this subject and took the position that no certificated employees should be nonrenewed. The trial court found that the association had not made a good faith offer to negotiate and that, consequently, the respondents were not in violation of RCW 28A.72. It found that the association was not interested in negotiating the criteria but was interested in seeking to endeavor to prevent the nonrenewal of any employee.

In *Spokane Educ. Ass'n v. Barnes*, 83 Wn.2d 366, 517 P.2d 1362 (1974), a similar position was taken by the Spokane Education Association, which insisted that it had the right to negotiate the budget after a levy failure for the purpose of preventing the nonrenewal of any teacher's contract. There the association also had taken the position that staff reductions were not negotiable. The association never requested negotiations to discuss tentative plans for limiting

staff reduction in the event of a levy failure. We held that it was incumbent upon the association to make a timely request for negotiations if it wished to avail itself of the opportunities afforded under RCW 28A.72.

The trial court correctly ruled that the association had waived its right to negotiate the adoption of criteria and reduction of personnel.

The decision to issue notices of nonrenewal to the appellants was made at an executive session of the board of directors and it is contended that this action constituted a violation of the Open Public Meetings Act of 1971, RCW 42.30. The trial court, in answer to this contention, held that the decision to nonrenew a contract of a teacher is a quasi-judicial matter and therefore is expressly exempt from the provisions of the open meetings act under RCW 42.30.140(2), which provides that the chapter shall not apply to

> [t]hat portion of a meeting of a quasi-judicial body which relates to a quasi-judicial matter between named parties as distinguished from a matter having general effect on the public or on a class or group . . .

We think the trial court correctly construed this act. In deciding whether a teacher's contract shall be nonrenewed, the school directors perform a function quasi-judicial in nature. This is manifest from the fact that their action is subject to judicial review. It is also a matter between the school district and the teacher and not a matter which has an effect on the public generally or on a particular class or group. It should be apparent that the school district, in considering the matter of nonrenewal in executive session, had in mind among other things the protection of the teachers from unwanted publicity. The appellants have given no reason why the public interest would be served by requiring these matters to be considered in open meetings, and we think a fair construction of the act reveals the legislative intent to exempt such considerations from the requirements of the Open Public Meetings Act.

Error is assigned to the dismissal of the complaint of Janet L. Richardson, who had signed a written agreement to accept a half-time teaching position. This appellant claimed that she was confused when she signed this agreement and didn't understand what she was doing. There is no contention that she was coerced or defrauded. Since she was a teacher, it can hardly be suggested she was incapable of understanding the instrument which she signed.

■ One cannot, in the absence of fraud, deceit or coercion, be heard to repudiate his own signature voluntarily and knowingly affixed to an instrument whose contents he was in law bound to understand. *National Bank v. Equity Investors*, 81 Wn.2d 886, 506 P.2d 20 (1973). The appellant court did not err in dismissing this claim.

■ Appellants suggest that under RCW 28A.58.490 they are entitled to an allowance of reasonable attorney fees as a matter of right, and even though they did not prevail in the action. The act provides "[t]he court in its discretion may award . . . a reasonable attorney's fee . . . ." The matter being discretionary and no abuse of discretion having been shown, this contention is likewise without merit.

The judgment is affirmed.

FINLEY, HUNTER, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

HALE, C.J. (dissenting)—The notice of nonrenewal here was, I think, insufficient and, therefore, invalid. It merely said that, because of insufficient funds, the district "had to budget for a reduced educational program" for the year 1972-73, resulting in the board's determination to reduce teacher positions. Other than to intimate that some teachers were to be laid off while a greater number was to be retained, the notice did not state in what respects the educational program for the ensuing year was to be reduced. Where plaintiff would stand in the relative scheme of this major reduction in force was neither specified nor even

implied except that she was among those to be discharged. In essence, the notice of nonrenewal did no more than to advise each nonrenewed teacher receiving it that the district lacked the necessary funds to continue the teacher's position.

How the court finds this notice to be adequate is unclear. The notice of nonrenewal would supply the teacher with less information and less basis for probable cause than a general newspaper account that the school district would lay off a specific number of teachers. If this is adequate notice in law, then the customary news story or editorial of a reduction in force mailed to a teacher and accompanied by a declaration that "this means you" must in law be held to suffice. I hardly think that either meets the minimal requirement of RCW 28A.67.070.

The notice of nonrenewal does not specify that the nonrenewed teacher is one of a specific number to be nonrenewed or retained; it does not in any way indicate the seniority standing of the teacher in relation to other teachers who are being renewed; nor does it specify if, how, or to what extent the role seniority will play as to all teachers to be nonrenewed; it does not state how seniority will figure specifically in a given case when applied to the particular teacher receiving the particular notice. Without these specifics, the notice, I think, says nothing. From it the teacher learns nothing about his relative position that he would not learn from a school superintendent's general news release that, due to lack of funds, the teaching force next year would be reduced and a stated number of teachers discharged.

I do not read the teacher's code of this State, RCW 28A, as authorizing such a cavalier method of terminating a teacher's right to a continuation of employment and abridging thereby her retirement entitlements. Rather, from beginning to end, in my judgment, the code establishes a protective mechanism akin to a civil service for teachers with tenure, giving protection on the job from arbitrary

and capricious discharge, demotion, or disciplinary action. It makes seniority one of the basic ingredients of tenure, for upon this to a large extent depends the teacher's vested rights to retirement compensation. The right to continued employment thus is not to be tampered with by such loose and unintelligible semantics as was employed in the board's criteria: "That seniority be the determining factor when program considerations appear equal." Under the fog of that terminology, a senior teacher could be dismissed by nonrenewal and a junior teacher retained for no better reason than that a principal, director or superintendent liked one teacher better than the other—and no one would be the wiser.

Why does the teacher's code create a form of civil service or merit system employment? First, a teacher has achieved the legal equivalent of appointment by examination, for he or she cannot even be appointed to a teaching position without possessing the professional qualifications prescribed by law, and evidenced by "an effective teacher's certificate or other certificate required by law or the state board of education." RCW 28A.67.070. Rightful possession or entitlement to such a certificate makes one a "certificated employee." These provisions alone should constitute at least the legal equivalent of a civil or merit system certificate of standing in the examinations. Secondly, the school board, in employing teachers, must take only those who possess the requisite professional qualifications evidenced by a state certificate. RCW 28A.67.070. The board is not a freely negotiating employer; its contract with the teachers must conform to the laws of the State. Although limited to a term of 1 year, renewal is automatic, for nonrenewal can be lawfully effected only by delivery of written notice prior to April 15. The notice must specify the cause or causes for nonrenewal of the contract, and the teacher has a right, by calling for a hearing, to challenge both the facts asserted in the notice and the legal sufficiency claimed as grounds for nonrenewal. At the hearing, the burden falls necessarily

upon the board to show valid, subsisting and lawful reason for nonrenewal, *i.e.*, termination of the contract of employment. The board, too, is obliged by law to negotiate in good faith with elected representatives of teachers (RCW 28A.72.030), a statutory duty upheld as constitutional and affirmed by this court. *American Fed'n of Teachers v. Yakima School Dist. 7*, 74 Wn.2d 865, 447 P.2d 593 (1968); *Bocek v. Bayley*, 81 Wn.2d 831, 505 P.2d 814 (1973).

That the board, in order to effectively terminate, *i.e.*, nonrenew, a teacher's contract carries the burden of proof with respect to the individually notified teacher is, I think, categorically shown in this language of RCW 28A.67.070:

> *Any decision not to renew such employment contract shall be based solely upon the cause or causes for nonrenewal specified in the notice. . .*

(Italics mine.) And,

> If any such notification or opportunity for hearing is not timely given by the district, the employee entitled thereto shall be *conclusively* presumed to have been reemployed by the district for the next ensuing term upon contractual terms identical with those which would have prevailed if his employment had actually been renewed by the board of directors for such ensuing term.

(Italics mine.)

That the legislature intended renewal to be automatic is clearly seen in the above statute and in the provision of RCW 28A.72.030 not only giving teachers certain collective bargaining rights but requiring the school board to "meet, confer and negotiate" with them at least concerning "curriculum, textbook selection, in-service training, student teaching programs, *personnel, hiring and assignment practices,* leaves of absence, *salaries and salary schedules* and noninstructional duties." (Italics mine.)

As is the case with nearly all tenured employment, employment rights may, upon proper complaint, be cancelled, that is, the teaching certificate revoked after hearing "for immorality, violation of written contract, intemperance,

crime against the law of the state, or any unprofessional conduct." RCW 28A.70.160.

Contrary to the views expressed by the majority, I find that *Thayer v. Anacortes School Dist.*, 81 Wn.2d 709, 504 P.2d 1130 (1972), a unanimous decision of this court, is controlling here. It recognizes on sound grounds, I think, the principle that all teacher tenure statutes, when read in pari materia, are designed to and do establish a system of teacher tenure based in part on seniority and in part on a design to protect the teacher's pension and retirement rights.

*Thayer* seems to me to be on all fours with this case. There, as here, the notice of nonrenewal expressed appreciation to the teacher for her devoted service and alluded to lack of funds as the reason for nonrenewal. There, as here, the notice made no mention of the teacher's seniority nor her relative seniority status as to the other teachers renewed or not renewed. There, as here, the nonrenewed teacher had no way of ascertaining why she was being nonrenewed other than an assertion of lack of funds and whether and to what extent other teachers of the same or similar category junior to her were being retained. Had the teacher in *Thayer* elected to challenge the notice on its content and meet the grounds set forth, she would be limited to contesting the sole issue of whether there were in fact adequate funds to pay her salary and be deprived thereby of a challenge to the vital question of why she, and not some one junior to her, was to be discharged by nonrenewal.

That is precisely the situation again before us. The notice gives no reason whatever why plaintiff is being laid off and others retained. Its only specified ground for nonrenewal is the general assertion that lack of funds made it impossible to continue her teaching position. In *Thayer*, we pointed out that RCW 28.67.076 preserved to a teacher her seniority standing when transferring from one school district to another and that this provision had been reenacted several

times, now being codified as RCW 28A.58.100(2)(h). We felt it quite unlikely that the legislature intended to preserve seniority status on transfer from one district to another while making no provision whatever for it at the outset. It is equally unlikely that the legislature would establish a comprehensive retirement system for teachers, accept their monetary contributions to it and do nothing to insure a measure of continuity of employment or ignore seniority as a major factor. One cannot attribute a vain or idle purpose to the legislature or that it intended to preserve by statute what the teacher never acquired by statute in the first place.

Accordingly, as in *Thayer*, it was held in *Peters v. South Kitsap School Dist. 402*, 8 Wn. App. 809, 509 P.2d 67 (1973), that, when economic conditions require a reduction in personnel, a school district must consider a teacher's seniority in relation to that of other teachers who have the same or a similar teaching assignment. In holding the notice inadequate and legally insufficient to sustain the nonrenewal, the court said that seniority would be the determinant in determining general reduction in teacher staff and that the notice of nonrenewal, *inter alia*, had to include an operative reference to seniority so that the nonrenewed teacher could ascertain her relative standing on the seniority lists or roster. We said, in *Thayer v. Anacortes School Dist.*, 81 Wn.2d 709, 712-18, 504 P.2d 1130 (1972):

> Our examination of the record leads us to the conclusion that the matter of plaintiff's seniority was an integral part of the circumstances upon which the sufficiency of the notice should have been tested. The court, therefore, in failing to take into consideration what effect plaintiff's seniority would have in deciding the sufficiency of the notice of nonrenewal, omitted a vital element upon which her duty to protest the notice depended.

and

> Thus, although the record does not show actual evidence of the plaintiff's seniority as a teacher and librarian in the Anacortes district, the case, as presented to the

trial court, made it a vital factor before the court and one to be considered in determining whether the notice of nonrenewal was legally sufficient to set the 10-day appeal term in motion. Her allegation of senior status and the supporting statement of policy governing reduction in the certificated staff and defendant's failure to controvert counsel's statements at trial gave plaintiff a right to assume that the school district was either waiving seniority as an issue, or conceding that she was senior in tenure to other librarians whose contracts had been renewed.

and

With seniority as a factor to be considered in the nonrenewal of her teaching contract, plaintiff could rightly assume, therefore, from the notice of nonrenewal, that teachers and librarians junior in tenure to her would be laid off first; she had a correlative right to assume further from the notice of nonrenewal that no librarian junior in tenure to her would be retained. Since the notice did not inform her that she was being dropped while junior librarians were being retained, she was not, under RCW 28.67.070, given reasonably adequate notice of the reasons for her nonrenewal and, therefore, was under no duty to appeal under pain of waiver of protest.

and

There was thus at the time plaintiff received the notice of nonrenewal a statute in effect affording her preferential rights to renewal of her contract as a school librarian, based on her years of continuous service as a certificated teacher and librarian within the Anacortes school system. To alert her to the necessity of protesting or requesting a hearing under these statutes, the notice of nonrenewal should have stated one way or the other that seniority would be ignored in reducing the teaching staff or library staff because of inadequate funds.

and, finally, declaring seniority to be the sine qua non of teacher tenure, we said:

In Erma Thayer's case, there is no hint whatever as to any complaints that she performed her services incompetently or even unsatisfactorily, nor any suggestion that the nonrenewal was based on anything other than lack of funds necessitating a reduction in the certificated teaching force. She had a right to assume from the notice that

all librarians junior to her in tenure had been included in the reduction.

Accordingly, the decree of the court is reversed and the cause remanded for a determination of seniority. If plaintiff is senior to librarians retained or renewed, her contract will be reinstated and a judgment entered for the amount in which she was damaged.

Our opinion in *Thayer* has been cited with approval in the short time since it was delivered on several occasions. *Peters v. South Kitsap School Dist. 402*, 8 Wn. App. 809, 509 P.2d 67 (1973); *Boyle v. Renton School Dist. 403*, 10 Wn. App. 523, 518 P.2d 221 (1974); and *Williams v. Board of Directors of Endicott School Dist. 308*, 10 Wn. App. 579, 519 P.2d 15 (1974).

All of these cases, I think, recognize that the legislature, in creating a code for the employment and continued services of teachers in the public schools, intended to and did actually design a system giving teachers protection against arbitrary and capricious discharge, and provided for their continued services by automatic renewal of contract unless good cause could be shown. If seniority be not the major factor upon which the right to renewal of contract depends, then the teachers of this state have no tenure at all in times of reduced enrollment or curtailed funding.

Either the legislature intended to make seniority the major basis for determining who would be retained and who would be laid off where major reductions in the teaching force are made necessary by lack of funds or reductions in enrollment, or they intended nothing more than a trifle. Unless seniority be the major basis for retaining teachers having similar qualifications and teaching assignments, a teacher is without any tenure at all. He or she may be discharged, *i.e.*, nonrenewed, without any cause whatever, upon whim or caprice, or even out of ill will under the blanket claim of economic necessity. Without seniority, the teachers have nothing in cases of major personnel reductions and all of the assertions of tenure amount to form without substance, rhetoric without principle, and their

rights to retirement whether vested or otherwise subject to forfeiture or abridgment. RCW 41.32.

In dealing with presumably qualified, competent and well-trained teaching personnel if the district is not held to the policy of first hired, last fired, it can, in cases of reducing the staff by several teachers, discharge or nonrenew any teacher without any cause whatever. This, I think, the legislature did not intend in enacting a comprehensive teacher and education code, Title 28A.

Petition for rehearing denied January 29, 1975.