[No. 43724.    En Banc.    January 15, 1976.]

DALE SMITH, *Appellant*, v. ROBERT T. GREENE, ET AL,
*Respondents.*

364

*William J. Powell* and *Bryan P. Harnetiaux*, for appellant.

*Slade Gorton, Attorney General*, by *John E. Lamp, Assistant*, and *MacGillivray, Jones, Clarke, Schiffner & Johnson*, by *Paul F. Schiffner*, for respondents.

UTTER, J.—Dale Smith, appellant, held a "probationary faculty appointment" with Washington State Community College District No. 17. He brought suit against the officers and trustees of the district, respondents herein, alleging errors in their denial of tenure to him. Respondents' motion for summary judgment was granted by the Superior Court.

In his appeal, appellant raises five issues: (1) whether appellant had a legitimate claim of entitlement to continued employment sufficient to invoke due process protections; (2) whether a statutory requirement of "reasonable consideration" by the board of trustees creates a protectable property interest or requires that reasons be given for their decisions; (3) whether members of the board of trustees acted beyond their authority in considering the recommendations of the presidents of the college and district; (4) whether the trustees' practice of requiring 3 years of probationary teaching before consideration of an award of tenure is invalid; and (5) whether a letter from the secretary of the board of trustees constituted the required notice of

nonaward of tenure. We hold the trial court resolved each of these questions properly and affirm the order of summary judgment.

Beginning in September 1971, appellant was employed by Community College District No. 17 under the terms of three 1-year contracts which designated appellant's status as a "probationary faculty appointment"[1] under the Community College Act of 1967. RCW 28B.50.010 *et seq.*[2] A review committee established pursuant to the act[3] periodically observed and evaluated appellant's teaching during each of these years. The evaluations covered appellant's performance in a number of areas. Some of the reports indicated a need for improvement in some areas of appellant's performance, although the committee twice recommended granting tenure to appellant. Affidavits filed in the case indicated that the district's board of trustees had uniformly decided to not consider tenure until the third probationary year. On February 5, 1974, copies of the review committee's reports and recommendations, along with letters of District President Johnson and Spokane Falls Community College President Snyder recommending denial of tenure, were mailed to appellant and each trustee. The letters of Johnson and Snyder did not state the reasons for their recommendation that tenure be denied.

At its regular meeting of February 21, 1974, the trustees considered all of the recommendations submitted and allowed appellant and his supporters to speak in his behalf. The trustees then unanimously voted not to grant appellant tenure without stating any reason for this decision. The following day, President Johnson, as secretary of the board

---

[1]"Probationary faculty appointment" is defined as a "faculty appointment for a designated period of time which may be terminated without cause upon expiration of the probationer's terms of employment . . ." RCW 28B.50.851(3).

[2]Regulations promulgated under this chapter by Washington State Community College District No. 17 are contained in WAC Title 132Q; *see* RCW 28B.50.100, 28B.50.852.

[3]*See* RCW 28B.50.851(7); RCW 28B.50.869; RCW 28B.50.856; WAC 132Q-88-030, *et seq.*

of trustees, notified appellant by letter that his employment contract would not be renewed for the 1974-75 school year or for any other ensuing year.

I

■ A faculty member may have a "property interest" protected by the due process clause if there are policies and practices promulgated and fostered by college officials that constitute a legitimate claim of entitlement to continued employment. *Perry v. Sindermann,* 408 U.S. 593, 602, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972). In *Board of Regents v. Roth,* 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972), the Supreme Court stated that to have a property interest in a benefit, a person must have more than an abstract need or desire for it.

> He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth, supra* at 577.

The Supreme Court dealt with a de facto tenure program in *Perry v. Sindermann, supra,* in which no state law formally established tenure rights. The court stated that where a teacher had held his position for a number of years, he

> might be able to show from the circumstances of this service—and from other relevant facts—that he has a legitimate claim of entitlement to job tenure. Just as this Court has found there to be a "common law of a particular industry or of a particular plant" that may supplement a collective-bargaining agreement . . . so there may be an unwritten "common law" in a particular university that certain employees shall have the equivalent of tenure. This is particularly likely in a college or university . . . that has no explicit tenure system even

for senior members of its faculty, but that nonetheless may have created such a system in practice.

*Perry v. Sindermann, supra* at 602.

Nothing in *Sindermann*, however, protects a mere subjective expectancy of tenure. Since under RCW 28B.50.852 and 28B.50.856[4] a probationary appointment does not continue beyond 3 years, at which time the trustees make the "final decision" on tenure (*cf. Bowing v. Board of Trustees*, 85 Wn.2d 300, 304, 534 P.2d 1365 (1975)), any expectancy of tenure is unreasonable. Appellant's "faculty appointment for a designated period of time" was subject to termination "*without cause* upon expiration of the probationer's terms of employment." (Italics ours.) RCW 28B.50.851(3). Under the terms of his third 1-year contract with Community College District No. 17, appellant's appointment ended in June 1974.

The fact that the review committee's recommendations are usually followed is not the kind of conduct which should confer a legitimate expectancy of tenure. The circumstances of this case are clearly distinguishable from those of other cases in which a protectable property inter-

[4]RCW 28B.50.852:

"The appointing authority shall promulgate rules and regulations implementing RCW 28B.50.850 through 28B.50.869 and shall provide for the award of faculty tenure following a probationary period not to exceed three consecutive regular college years, excluding summer quarter: *Provided,* That tenure may be awarded at any time as may be determined by the appointing authority after it has given reasonable consideration to the recommendations of the review committee."

RCW 28B.50.856:

"The probationary faculty appointment period shall be one of continuing evaluation of a probationer by a review committee. The evaluation process shall place primary importance upon the probationer's effectiveness in his appointment. The review committee shall periodically advise each probationer, in writing, of his progress during the probationary period and receive the probationer's written acknowledgment thereof. The review committee shall at appropriate times make recommendations to the appointing authority as to whether tenure should or should not be granted to individual probationers: *Provided,* That the final decision to award or withhold tenure shall rest with the appointing authority, after it has given reasonable consideration to the recommendations of the review committee."

est has been found. *See, e.g., Soni v. Board of Trustees*, 376 F. Supp. 289 (E.D. Tenn. 1974), *aff'd*, 513 F.2d 347 (6th Cir. 1975) (professor told verbally and in writing that he would have been granted tenure but for lack of United States citizenship, participated in meetings of tenured faculty and in tenured faculty retirement program, and became a citizen); *Roane v. Callisburg Independent School Dist.*, 511 F.2d 633 (5th Cir. 1975) (school board's written rules provided that, after first year of employment, superintendent should be elected for term of from 1 to 5 years and superintendent's predecessor and successor were hired pursuant to such understanding). Appellant's position is analogous to that of the plaintiff in *Bradford v. Tarrant County Junior College Dist.*, 492 F.2d 133 (5th Cir. 1974), who was held to have a mere subjective expectation of employment where she was nontenured and received indication from her supervisor that her contract would be renewed but the actual offer of renewal could be made only by the college president. In *Peacock v. Board of Regents*, 380 F. Supp. 1081, 1086 (D. Ariz. 1974), *aff'd*, 510 F.2d 1324 (9th Cir. 1975), *cert. denied*, 95 S. Ct. 2668 (1975), the court rejected plaintiff's argument that the method of selection gave him a protected property right in a department chairmanship, noting that the fact that plaintiff had faculty support did not constitute a legitimate claim of entitlement. Considering the facts here in the light most favorable to appellant, the trial court was correct in finding that appellant's expectancy of tenure was not a material issue in view of the existing statutes.

## II

Appellant alternatively claims that if his expectancy of tenure did not afford him due process protection, such due process rights should be found in the statutory procedures governing the award of tenure. Appellant asserts that RCW 28B.50.856, requiring the trustees to give "reasonable consideration" to the review committee's recommendations when deciding on an award of tenure, injects accountability into the tenure process and creates a "property interest" by

virtue of state statute. We cannot agree. That section also states "the final decision to award or withhold tenure shall rest with the appointing authority [the trustees] . . . " RCW 28B.50.856. The final determination on tenure is thereby granted to the board of trustees regardless of committee recommendation. *Cf. Bowing v. Board of Trustees, supra* at 300.

The tenure scheme of Community College District No. 17 is like that in *Burdeau v. Trustees of Calif. State Colleges,* 507 F.2d 770 (9th Cir. 1974), where nothing in the state statutes or regulations of the college provided that reemployment was guaranteed if certain standards were met or recommendations made. The court stated, at page 774, "[u]ntil tenure is obtained [a faculty member] may equal or exceed minimum requirements for evaluation and still the school may prefer to employ someone else for the position he seeks." Under regulations similar to the statutory procedures here, a nontenured faculty member was held to have no protectable property interest in reemployment. *Cusumano v. Ratchford,* 507 F.2d 980 (8th Cir. 1974), *cert. denied,* 423 U.S. 829, 46 L. Ed. 2d 46, 96 S. Ct. 48 (1975). The apparent thrust of the probationary faculty appointment classification in our act was to avoid the very de facto tenure situation hypothesized in *Perry v. Sindermann, supra.* We cannot find a protectable property interest in appellant based upon either the terms of the state statute or a course of conduct creating an objective expectation of continued employment and therefore believe cases cited by appellant requiring a statement of the evidence relied upon and the reasons for the determination are inapplicable. *Cf. Pierce v. Lake Stevens School Dist. 4,* 84 Wn.2d 772, 776-77, 529 P.2d 810 (1974).

▮ The statute still must be complied with, however, and appellant urges that the term "reasonable consideration" in RCW 28B.50.856 and WAC 132Q-88-080(1)[5] means

---

[5]WAC 132Q-88-080:

"(1) Upon receiving the various recommendations regarding the award or nonaward of tenure or the nonrenewal of a contract of the

370

that the trustees must do something more with regard to the review committee's recommendation than to simply state they gave consideration to that recommendation. We are unclear as to the intended meaning of the term "reasonable consideration" as used in the statute. If this phrase existed by itself, it would be arguable that reasonable consideration means something more than mere consideration and that the inclusion of the word "reasonable" means the reviewing body must give reasons for its decision. In a preceding section of the statute, however, the legislature made clear that when they wished to insure due process in employment matters, they will use those specific words. The statute defining tenure, RCW 28B.50.851(1), states, " '[t]enure' shall mean a faculty appointment for an indefinite period of time which may be revoked only for adequate cause and by due process . . ." Having been so explicit in their use of the term "due process" in the preceding section, we will not ascribe to the legislature a command to afford due process protections, including a statement of reasons, absent the use of that specific phrase in the succeeding section of the statute, RCW 28B.50.856. See Department of Labor & Indus. v. Cook, 44 Wn.2d 671, 675, 269 P.2d 962 (1954); cf. Washington Natural Gas Co. v. PUD 1, 77 Wn.2d 94, 98, 459 P.2d 633 (1969). If the framers of the statute or regulations intended that the trustees give reasons for not following the recommendation of the review committee, it would have been easy for them to so provide in explicit language. This they did not do. We cannot read into a statute words which are not there. Vannoy v. Pacific Power & Light Co., 59 Wn.2d 623, 629, 369 P.2d 848 (1962).

### III

Appellant contends that the recommendation of District

---

evaluated probationers, the board of trustees shall, before its regular March meeting, examine the records of the probationer or probationers so referred to them and give reasonable consideration to the recommendation of the review committee as to the award or nonaward of tenure on the nonrenewal of a contract to said probationer or probationers."

President Johnson was without authority, that the recommendation of College President Snyder was based on an improper delegation by the board of trustees, and that even if these recommendations were properly offered, consideration of them by the board of trustees was not authorized by statute or regulation. WAC 132Q-88-070(1) provides that the review committee's recommendation regarding tenure is to be forwarded to the college president, who forwards his own recommendation along with that of the committee to the district president. The regulation does not state what steps the district president is to take at that point, although it specifies that copies of "the recommendations" are to be sent to the probationer, his department chairman, and the appropriate dean.

██ It is true that the power to promulgate rules does not include the power to legislate and that regulations must be within the framework and policy embodied in the statute. *State ex rel. West v. Seattle*, 50 Wn.2d 94, 309 P.2d 751 (1957); *Kitsap-Mason Dairymen's Ass'n v. State Tax Comm'n*, 77 Wn.2d 812, 467 P.2d 312 (1970). WAC 132Q-88-070(1) does not, however, conflict with the framework established by the legislature in RCW 28B.50 for the award of tenure at community colleges. RCW 28B.50.852 and 28B.50.856, providing for consideration of the review committee's recommendation by the board of trustees, do not limit the board's consideration to the recommendation alone. If the legislature intended that the trustees consider nothing beyond the recommendation of the committee, it would be meaningless to grant the trustees the "final decision" in tenure matters, thereby authorizing them to reach a decision contrary to that recommended by the review committee. Whenever possible, a statute should be construed so that no portion of it is superfluous or insignificant. *Kasper v. Edmonds*, 69 Wn.2d 799, 804, 420 P.2d 346 (1966).

Moreover, the trustees have the broad power to "delegate to the [college] president or district president any of the powers and duties vested in or imposed upon it by this

chapter." RCW 28B.50.140(14).[6] We have recognized that gathering and presenting facts which may be required by an official charged with a statutory duty and the making of appropriate recommendations are without doubt delegable duties. *Ledgering v. State*, 63 Wn.2d 94, 100, 385 P.2d 522 (1963); *Pierce v. Lake Stevens School Dist 4, supra* at 783. It should be noted that the board of trustees here did not attempt to delegate its authority to make the final decision in tenure matters.

█ The district president need not locate explicit authority in a statute or regulation before he takes any action or writes a letter. Institutions created by the legislature can exercise, in addition to the powers expressly provided by statute, those powers "necessary or fairly implied in, or incident to, powers expressly granted [and] those essential to the declared objects and purposes of such district." *Noe v. Edmonds School Dist. 15*, 83 Wn.2d 97, 103, 515 P.2d 977 (1973). Also, a general grant of power or statutory direction to perform official duties, unaccompanied by definite directions as to how the power is to be exercised, implies the right and duty on the part of individual officials to employ the means and methods necessary to comply with statutory requirements. *State ex rel. Taylor v. Superior Court*, 2 Wn.2d 575, 585, 98 P.2d 985 (1940). The president of district No. 17 is the chief administrative officer of the district and serves as secretary to the board of trustees. It is reasonable that, in carrying out his duty to maintain an efficient educational system, he communicate often with the trustees on a wide variety of subjects.

Neither was the action of the board of trustees in considering the recommendations of the district and college presidents beyond its authority. RCW 28B.50.140(13) authorizes the trustees to "perform all other acts not inconsistent with law or rules and regulations of the state board for community college education as the board of trustees

---

[6] Publication in the Washington Administrative Code satisfies the requirement that a delegation by the board of trustees be "by written order filed in its office . . . ." RCW 28B.50.140(14).

may *in its discretion* deem necessary or appropriate . . ." (Italics ours.)[7] No such inconsistency has been advanced by appellant. Moreover, in *Pierce v. Lake Stevens School Dist. 4, supra,* we recognized that, as a matter of practical administrative procedure, it is reasonable for a board of school directors to seek the assistance of its subordinates in gathering facts and making a recommendation for their consideration. As in *Pierce,* the board of trustees here "exercised its statutory power in acting upon the recommendations of the professional adminstrators which it employed." *Pierce v. Lake Stevens School Dist 4, supra* at 783.

Appellant also submits that the trial court erred in granting summary judgment because questions of fact are presented by the possibility that not all student evaluations were presented to the trustees and that the comments of appellant were not attached to the December 1973 review committee report for consideration by the trustees. While the first allegation may present a genuine issue of fact, in the absence of any indication in the statute or regulations that consideration of student evaluations is required, it does not constitute a "material" fact for purposes of summary judgment. *See Barber v. Bankers Life & Cas. Co.,* 81 Wn.2d 140, 144, 500 P.2d 88 (1972). Under WAC 132Q-88-060(4) the probationer may note in writing his disagreements with the review committee report, with said "writing to be attached to evaluation report copies . . ." We recognize that, as a matter of constitutional due process, a state agency's discharge regulations must be followed even if the agency could have discharged the employee summarily without affording other due process protections. *Vitarelli v. Seaton,* 359 U.S. 535, 3 L. Ed. 2d 1012, 79 S. Ct. 968 (1959); *Mabey v. Reagan,* 376 F. Supp. 216, 223-25 (N.D. Cal. 1974). District administrators and trustees may not disregard the duties imposed by their own regulations simply because it

[7]In addition, community college boards of trustees "[m]ay perform such other activities consistent with this chapter and not in conflict with the directives of the college board." RCW 28B.50.140(15).

is more convenient to do so, and they are not excused from full compliance because of their inattention to the requirements imposed by law. Here, because appellant and his supporters were afforded ample opportunity to present their position, including their response to the review committee report, to the trustees at a public hearing, any failure to attach appellant's written comments to the report was harmless error. This does not mean that every departure from prescribed procedures may be cured by allowing the individual an opportunity to orally present a case to the decision makers.

## IV

Appellant first argues that the district's practice of not considering an award of tenure until the third year of probationary teaching is invalid because it violates the pertinent statutes and regulations. RCW 28B.50.852 does not create a statutory right to tenure consideration "at any time" during the probationary period. The section is clear and unambiguous. *See Roza Irrigation Dist. v. State,* 80 Wn.2d 633, 635, 497 P.2d 166 (1972). "[T]enure may be awarded at any time *as may be determined by the appointing authority* [the trustees] . . ." as long as the probationary period does not exceed three consecutive regular college years. (Italics ours.) RCW 28B.50.852. The practice of the district comports with the statutory language.

■ The second alleged defect in the district's probationary practice is that it was never reduced to writing. While it may be true that an unwritten policy of an education board is not enforceable against it (*see Mukilteo Educ. Ass'n v. Mukilteo School Dist. 6,* 11 Wn. App. 675, 683-85, 524 P.2d 441 (1974)), appellant does not seek to enforce the 3-year probationary "policy." Rather he implies that a consistent course of conduct may amount to a policy which may not be enforced against him unless it is embodied in writing. There is nothing in the statutes which requires that this practice of the trustees be reduced to writing. The trustees are required only to "promulgate such rules and regulations . . . as the board of trustees may *in its*

*discretion* deem necessary or appropriate to the administration of community college districts . . ." (Italics ours.) RCW 28B.50.140(13). Under the State Higher Education Administrative Procedure Act, which specifies adoption and enforcement procedures for some policies of community colleges, "rules, regulations, orders, statements, or policies relating primarily to . . . employment relationships" are excluded from its scope. RCW 28B.19.020(2). RCW 28B.50.852 requires the trustees to promulgate rules and regulations implementing the statutory tenure provisions, but there is no specification of what type of regulations are needed. Community College District No. 17 has adopted tenure regulations in compliance with this section of the act. WAC 132Q-88-010 *et seq.* In the absence of a legislative requirement that the probationary practices of the trustees be formally adopted or reduced to writing, we cannot say the course of conduct engaged in here is invalid. *See Vannoy v. Pacific Power & Light Co.,* 59 Wn.2d 623, 369 P.2d 848 (1962).

■ Third, appellant asserts that the review committee reports were not submitted to the trustees annually as apparently contemplated by WAC 132Q-88-040(1).[8] As noted above, scrupulous adherence to statutory and regulatory provisions is generally required. Here, however, in light of the valid practice of the trustees in considering an award of tenure only during the third probationary year, appellant was not prejudiced by the alleged failure to submit the review committee reports during the two preceding academic years. Submission of the reports prior to the third year would have been of no effect under the statutorily authorized probationary period as applied by district No. 17. The full reports of the review committee were sent to

[8]WAC 132Q-88-040:

"(1) Each review committee shall be required to conduct an evaluation of each full-time probationary faculty appointee assigned to such review committee by the president and render reports required by this rule to the president, the probationary faculty appointee and to the appointing authority during the regular college year." *See also* WAC 132Q-88-060.

each trustee prior to their consideration of tenure for appellant on February 21, 1974.

V

Finally, appellant argues that the letter he received from the secretary of the board of trustees following the February 21, 1974, meeting did not comply with the district's regulations. WAC 132Q-88-080 (2) requires that written notice of the award or nonaward of tenure be transmitted to the probationer. The letter of February 22 did not use the word "tenure" but stated that appellant's employment contract with district No. 17 would "not be renewed for the 1974-75 or any other ensuing school year." However, since the probationary period is limited to three consecutive regular college years under RCW 28B.50.852, notice that appellant's contract would not be renewed for a fourth year is equivalent to a notice both that tenure was not awarded and that his probationary faculty appointment would not be renewed. The pertinent statutory provision requires notice of a decision "not to renew" a probationary faculty appointment and does not refer to "tenure." RCW 28B.50.857. The failure of the district to comply with the exact letter of its notice regulation did not prejudice appellant. He was aware of the nature of the board's action and the letter of February 22 informed him of the consequences of its action and constituted a sufficient notice of nonaward of tenure.

Judgment affirmed.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, BRACHTENBACH, and HOROWITZ, JJ., concur.

Petition for rehearing denied March 10, 1976.