[No. 3582-4-III. Division Three. October 2, 1980.]

THE STATE OF WASHINGTON, *on the Relation of Diane Murray, Appellant,* v. LOIS SHANKS, ET AL, *Respondents.*

*Bryan P. Harnetiaux* and *Powell & Harnetiaux,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Richard M. George, Deputy,* for respondents.

GREEN, C.J.—The County of Spokane and Lois Shanks, coroner, successfully moved for summary judgment dismissing a petition for mandamus to change the cause of death on the death certificate of Michael John Murray from "suicide" to "accidental." Mrs. Murray, the decedent's wife, appeals contending a genuine issue of material fact exists whether the county coroner's decision was arbitrary and capricious.

The affidavits and investigative reports filed in support of the motion for summary judgment reveal that on January 8, 1978, Mr. Murray was found dead in his car which was parked in his closed garage. The Spokane County Sheriff's deputies found both the living room and garage lights on in Mr. Murray's house. The stereo in the living room was on and a note written by Mr. Murray reminding himself not to be late for work the following day was found on the dining room table. The car window was partly open, the key to the ignition was on and the battery was dead. They found a glass of liquor on the console and a can of beer on the front floor of the automobile.

The investigative reports also showed that an employee of the store where Mr. Murray worked stated that Mr. Murray had been having marital problems and on January 4 Mrs. Murray had gone, with their child, to Montana. A neighbor stated Mr. Murray seemed despondent the evening before his death. A deputy prosecuting attorney reported that upon her return from Montana, Mrs. Murray told him her husband had a drinking problem. Although he quit drinking for 3 years, he had recently begun drinking again because of job pressures and she went to Montana to think things over. She further stated her husband had once considered or attempted suicide by running his car in a closed garage.

The toxology report indicated a .16 percent blood alcohol level and 62 percent saturation level of carbon monoxide. On the basis of all the reports, the coroner listed the cause of death as carbon monoxide poisoning and the manner of death as suicide.

Mrs. Murray challenged the coroner's decision and the motion for summary judgment, asserting she had substantial evidence to establish the Murrays had a stable marriage and Mr. Murray had no problems at work. She stated in her affidavit that she had planned to visit her parents in Montana and a few days before Mr. Murray's death they made plans for him to join her. She claimed that small amounts of alcohol caused her husband to fall asleep. She argued that because the tape deck in their home was broken, the evidence suggests Mr. Murray fell asleep while drinking and listening to the tape deck in his car. She filed depositions[1] of the people to whom the officers had spoken which indicated the information given by them had been misinterpreted.

The objective of a summary judgment is to avoid a useless trial. *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 349, 588 P.2d 1346 (1979). The burden is on the party moving for summary judgment to demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 511, 598 P.2d 1358 (1979). A material fact is one upon which the outcome of the litigation depends. Affidavits and other testimonial documents of the moving party must be scrutinized with care and all reasonable inferences from the evidence must be resolved against him, while affidavits of the nonmoving party are afforded leniency. *Meadows v. Grant's Auto Brokers, Inc.*, 71 Wn.2d 874, 431 P.2d 216 (1967); *Lamon v. McDonnell Douglas Corp., supra.*

First, Mrs. Murray contends the evidence indicating Mr. Murray's death was an accident, considered with the presumption against suicide established in *Burrier v. Mutual Life Ins. Co.*, 63 Wn.2d 266, 387 P.2d 58 (1963), creates a question of fact whether the coroner's decision was arbitrary and capricious. We disagree.

---

[1] The depositions relied upon by Mrs. Murray were made in preparation for trial against her husband's insurance carrier, which was settled in her favor.

■ In *Vanderpool v. Rabideau,* 16 Wn. App. 496, 498, 557 P.2d 21 (1976), we held that a coroner's decision is arbitrary and capricious when it is

> willful and unreasoning action, without consideration and in disregard of facts or circumstances. Where there is room for two opinions, action is not arbitrary or capricious when exercised *honestly and upon due consideration,* even though it may be believed that an erroneous conclusion has been reached.

(Italics ours.)

RCW 70.58.170 requires the coroner to certify the cause of death according to his "best knowledge and belief." That statute does not direct, nor have we found or been cited to a case which holds that a presumption against suicide is applicable to a coroner's determination of death. *Burrier* involved a common law presumption to aid a jury in an insurance case. Even if the presumption were considered by the court, it would not aid Mrs. Murray because different conclusions can be drawn from the evidence and we cannot substitute our opinion for that of the coroner.

■ Second, Mrs. Murray argues that a question of fact exists whether Dr. Shanks duly considered the facts presented because there are no set procedures for investigating causes of death and Dr. Shanks did not personally investigate the death. The statute directing the coroner to certify the cause of death does not provide direction as to how those official duties are to be exercised. In *Smith v. Greene,* 86 Wn.2d 363, 372, 545 P.2d 550 (1976), the court held that where a statute is silent in this regard, an official has an implied right and duty to employ the means and methods necessary to accomplish the statute's requirements. We must presume that the performance of those duties meets those requirements. *Booker v. South Central School Dist. 406,* 23 Wn. App. 274, 276, 597 P.2d 395 (1979).

Additionally, our courts have established that it is reasonable for an official to seek assistance from his subordinates in gathering facts and making recommendations so long as the ultimate decision–making power has not been

delegated. *Pierce v. Lake Stevens School Dist. 4,* 84 Wn.2d 772, 783, 529 P.2d 810 (1974); *Jeffers v. Seattle,* 23 Wn. App. 301, 309, 597 P.2d 899 (1979). Although Dr. Shanks stated she relied heavily on reports of investigating officers in making her decision, there is no evidence that she delegated the ultimate decision of the cause and manner of death.

We do find, however, that the court was incorrect when it interpreted the arbitrary and capricious test to require summary judgment unless it is found as a matter of law that the coroner's decision was totally unsupported by the evidence. In doing so, the court failed to consider whether the decision was exercised "honestly and upon due consideration" of the facts. *Vanderpool, supra* at 498.

Dr. Shanks' deposition indicates that she may not have considered intent as an element of suicide when the evidence surrounding Mr. Murray's death was evaluated.[2] On the other hand, Dr. Shanks' affidavits state that she "utilized the ordinarily understood definition of suicide as a voluntary and intentional taking of one's own life" and that the additional evidence submitted by Mrs. Murray did not change her mind.

Dr. Shanks argues that *Vanderpool, supra,* is controlling. We disagree. There, we held that even though the coroner did not review all the reports before making his decision that a death was suicide, the decision was not arbitrary or capricious since he later reviewed the reports and stated

---

[2]In her deposition, Dr. Shanks stated:

"A. So now, we go down to accident and suicide. What makes this a suicide as opposed to an accident? One, I think it's suicidal to run a car in a closed garage.

"Q. Now, let me stop you there. Do you mean by that, that is circumstantial evidence of an intent to take one's own life or are you saying that or are you commenting on the intent there?

"A. I'm just saying a fact. I think it is suicidal to run—anyone to run a car in a closed garage and have a gasoline motor running."

In another section of her deposition, in response to whether intent was a part of her definition of suicide, she stated:

"I hold people responsible for their actions even if they're drunk and said, 'I don't remember shooting him.' I hold them responsible."

that they did not alter his determination. Here, there is evidence that Dr. Shanks may have predefined death from carbon monoxide poisoning in an enclosed garage as suicide without first taking the facts into consideration. The affidavit of Maxine Pielle, whose father died as a result of carbon monoxide poisoning in an enclosed garage, persuaded Dr. Shanks to change the death certificate from "undetermined" to "accidental." Upon doing so, Dr. Shanks told Mrs. Pielle that "never again as long as I live will I ever put down carbon monoxide death as anything but suicide." This affidavit is uncontroverted.

We find that the ambiguous testimony of Dr. Shanks, coupled with Mrs. Pielle's affidavit, creates a question of fact whether Dr. Shanks "honestly and upon due consideration" of the evidence recorded the cause of death according to her "best knowledge and belief." If Dr. Shanks is found to have a predetermined bias as to the cause of death in carbon monoxide cases, the court in its discretion may appoint the prosecuting attorney as an alternative official to redetermine the cause of Mr. Murray's death. RCW 70.58-.170.

In light of our determination, we need not consider the remaining contentions.

Reversed and remanded for further proceedings in accordance with this opinion.

McINTURFF and ROE, JJ., concur.

Reconsideration denied October 16, 1980.

Review denied by Supreme Court December 19, 1980.