[No. 43380. En Banc. May 1, 1975.]

SHIRLEY BOWING, *Respondent*, v. BOARD OF TRUSTEES OF GREEN RIVER COMMUNITY COLLEGE DISTRICT NO. X, *Petitioner*.

*Slade Gorton, Attorney General,* and *Thomas L. Anderson, Assistant,* for petitioner.

*Jones, Grey, Bayley & Olsen,* by *Dexter A. Washburn, Kevin C. McMahon,* and *George W. Steers,* for respondent.

ROSELLINI, J.—This matter is before the court upon the granting of petitions of both parties for review of the decision of the Court of Appeals, Division One, in *Bowing v. Board of Trustees,* 11 Wn. App. 33, 521 P.2d 220 (1974). It is a suit by a tenured faculty member, alleging that she was wrongfully discharged and seeking reinstatement.

The Superior Court granted the plaintiff's motion for summary judgment, holding that prescribed procedures had not been followed by the Board of Trustees of the college and that she had consequently been denied due process of law. The procedures followed are set forth in some detail in the opinion of the Court of Appeals, which reversed and remanded the case, and we will refer only to those which are involved in the issues before us.

At the superior court level, a partial summary judgment was entered on May 12, 1972. That judgment left open the question of damages and the amount of reasonable attorney fees, the court stating that unless the parties could stipulate as to the amounts, the facts would have to be established in open court. Four days later a judgment was entered, setting forth the amount of damages and the attorney fees allowed. The defendant appealed within 30 days of that judgment.

However, the appeal was taken more than 30 days after the entry of the partial summary judgment on May 12.

The plaintiff moved in the Court of Appeals to dismiss the appeal because it was not taken within 30 days after the partial summary judgment was entered, citing ROA I-33. This motion was denied without comment. She asks this court to review the Court of Appeals' refusal to dismiss, contending that that court was without jurisdiction to hear the appeal.

The plaintiff's contention in this regard is grounded upon the theory that the partial summary judgment entered on May 12 was a final judgment, even though the amount of damages and attorney fees had not yet been determined. She relies upon CR 54(b), which provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination in the judgment, that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

 It will be seen that a partial judgment is final only when there is a final judgment upon one or more claims. The plaintiff's claim in this case was not fully adjudicated until the amount of damages had been determined, including the attorney fees, which the court awarded as an element of damages. The plaintiffs insists, however, that the defendant could have taken an appeal from the partial judgment and left the amount of damages and fees to be determined in a separate proceeding. Such a procedure would produce the very mischief which the rule was de-

signed to prevent—the piecemeal trial and appeal of cases. The partial summary judgment was not a final judgment as to any claim or any party and therefore was not appealable under CR 54(b).

Since the appeal was taken within 30 days after the entry of final judgment, the Court of Appeals did not err in refusing to dismiss it.

Two questions which the Court of Appeals decided merit this court's attention. Error as to one of them is raised by the plaintiff, and review of the other is sought by the defendant. Both of these concern the interpretation of procedural rules involved in the administrative process.

Pursuant to RCW 28B.50.863, providing for a hearing by a review committee before dismissal of a tenured faculty member, RCW 28B.50.852, requiring the Board of Trustees to establish rules implementing the tenure statutes, and Green River Community College dismissal rule B12, a hearing was conducted before a committee, which found the two charges against the plaintiff to be unsubstantiated. The matter was then heard before the board, which reviewed the written record and listened to arguments of counsel. The board concurred with the review committee that one charge had not been proven, but remanded the case for reconsideration of the second charge, in accordance with the college's rule B12, pointing out certain evidence which it felt substantiated the second charge. The review committee, after reconsideration, adhered to its original position. The board then overruled the committee's findings and dismissed the plaintiff, a disposition also authorized by rule B12.

In reviewing this procedure, the Superior Court was called upon to interpret the statutes and rule referred to above. It construed these as placing exclusive fact-finding power in the review committee. The Court of Appeals reversed this holding, finding that the Board of Trustees was not bound by the review committee's findings. The plaintiff has asked this court to reinstate the judgment of the Superior Court upon this point.

■ We are of the opinion that the Court of Appeals correctly construed the applicable statutes and the rule promulgated by the college. RCW 28B.50.863 provides that the review committee shall hear the evidence and shall prepare and submit recommendations to the appointing authority (the Board of Trustees). Rule B12 provides for reconsideration by the committee if the board does not agree with its recommendation and provides that only after such reconsideration should the board make a final decision overruling the review committee. RCW 28B.50.864 provides that an appeal may be taken from the final decision of the board. Furthermore, RCW 28B.50.864, which authorizes a judicial review of a board's decision to dismiss, expressly adopted (at the time of the hearings involved in this action)[1] the provisions of the administrative procedure act, RCW 34.04. RCW 34.04.110 requires that board members personally consider the record and also requires that the board (the "officials who are to render the decision") shall make findings of fact.

All of these considerations were noted by the Court of Appeals in reaching the decision that the board was not bound by the findings of the review committee (which in this case were negative in nature). We find that decision to be in accord with the manifest intent of the statutes and of the rule adopted by the college. It is also in accord with the general rule. *See* 2 Am. Jur. 2d *Administrative Law* § 438 (1962).

Based upon its holding that the board had acted within its authority when it rejected the review committee's finding that the charges were not substantiated in the record, the Court of Appeals set aside the summary judgment. However, it sustained the trial court's holding that the board had failed to follow the requirements of RCW 34.04.110, and ordered the case remanded to the board with directions to afford the plaintiff an opportunity to be heard

[1] RCW 34.04 no longer applies to educational institutions of higher learning, which are now covered by the State Higher Education Administrative Procedure Act, RCW 28B.19.

after serving her with a proposal for decision, including findings of fact and conclusions of law.

The defendant has asked the court to review this aspect of the decision of the Court of Appeals. It is acknowledged that our decision will not affect future proceedings in institutions of higher education, since the administrative procedure act no longer applies to them. Nevertheless, the rights of the parties in this case are affected, and amicus has urged the court to review the decision because it will have an effect upon the proceedings of many other administrative bodies.

RCW 34.04.110 provides:

Whenever in a contested case a majority of the officials of the agency who are to render the final decision have not heard or read the evidence, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a proposal for decision, including findings of fact and conclusions of law has been served upon the parties, and an opportunity has been afforded each party adversely affected to file exceptions and present written argument to a majority of the officials who are to render the decision, who shall personally consider the whole record or such portions thereof as may be cited by the parties. Oral arguments may be heard in the discretion of the agency.

The record shows that in this case not only did all the members of the board read the evidence which was presented to the review committee, but in addition they held a hearing and listened to arguments of counsel after they had read the record of the hearing. Nevertheless, the Court of Appeals held that the plaintiff had been denied due process because her counsel was not given another opportunity to argue the case after the committee, on remand, had adhered to its original findings and recommendation with respect to the second charge.

The Court of Appeals found the language of RCW 34.04.110 ambiguous and interpreted it as requiring that findings of fact, conclusions of law and a proposal for decision be submitted to the parties in any case where a major-

ity of the decision making officials have not heard the oral testimony, even though they may have read the record of that testimony. The rationale of the court is set forth in the following paragraph:

When RCW 34.04.110 is read in its entirety, it is apparent that the legislature recognized that an apposite argument could only be made after it was realized that the board proposed to disregard the recommendation of the committee. Were we to accept the board's reading of the statute, we would have to read the word "evidence" to mean "record." But in the same sentence of the statute it *is required* that if the board members have not "heard or read the evidence," they must, in addition to providing a proposed decision and an opportunity to be heard, "personally consider [read] the whole *record*." (Italics ours.) It is thus apparent that (1) when the legislature meant "record" it said record and not "evidence"; and (2) "heard or read the evidence" cannot mean the same thing as "read the record" because it is the *record* that the board must read when it has *not* heard or read the *evidence*. If "evidence" meant "record," the sentence would produce a non sequitur.

*Bowing v. Board of Trustees,* 11 Wn. App. 33, 41, 521 P.2d 220 (1974).

The court further reasoned that the statute must be read in the light of rule B12, which requires the board to return the proceedings to the committee for reconsideration if it does not agree with the committee's findings and recommendations, and can overrule the committee only after such remand. It concluded that due process required that the parties have an opportunity to reargue the matter after such a remand, in order for them to have a hearing at a meaningful time. Following this line of reasoning, it interpreted the provisions of RCW 34.04.110 not only to require that the board submit findings, conclusions and proposal for decision to the parties if it has not heard the testimony, but also to require that this be done *after* the board has returned the proceedings to the committee for reconsideration and has received its response.

In reaching this conclusion, the court made no reference

to any of the authorities which have construed RCW 34.04.110. This provision, as well as most of the language of RCW 34.04, is taken from the model act proposed by the National Conference of Commissioners on Uniform State Laws and the American Bar Association in 1946. *See Model State Administrative Procedure Act* § 10, 9C U.L.A. (1957), *Revised Model State Administrative Procedure Act* (1961), 9C U.L.A. Cum. Supp. § 11 (1967). In the annotation, the provision is entitled "Examination of evidence by Agency." At page 177, the commissioners explain the purpose of this section as follows:

> (5) Provision assuring personal familiarity on the part of the responsible deciding officers and agency heads with the evidence in quasi-judicial cases decided by them;

The model act was revised in 1961. In this revision the phrase "heard or read the evidence" was changed to "heard the case or read the record." The commissioners' note declares:

> The purpose of this section is to make certain that those persons who are responsible for the decision shall have mastered the record, either by hearing the evidence, or reading the record or at the very least receiving briefs and hearing oral argument. It is intended to preclude "signing on the dotted line."

The plaintiff readily concedes that under this revision, the submission to the parties of findings and conclusions and proposal for decision is not necessary if the deciding officials, though not being present at the taking of oral testimony, have read the record. She maintains, however, that the revision was made with the intent to effect a substantial change in the provision. She points to no evidence that problems had arisen under the 1946 language, which made a change seem necessary and desirable, and cites no case construing the original language to mean that the deciding officials must submit findings, conclusions and proposal for decision in any case in which they have not listened to the oral testimony.

Militating against the plaintiff's interpretation of this revision is the absence of any language in the commissioners' note calling attention to a significant change in the wording of the provision. In the notes to other revisions in the model act, the commissioners consistently point out substantial changes. *See* notes to § 2, p. 145; § 3, p. 147; § 4, p. 148; § 6, p. 149; § 9, p. 151; § 10, p. 153; § 14, p. 157, and § 15, p. 159.

Since it was the commissioners' practice to call attention to significant changes, it can be assumed that the changes in the wording of section 10 of the 1946 act were made for purposes of clarification rather than to manifest an intent to change the procedures required under this section. It appears that no court had construed the language as meaning anything other than that deciding officials who have not heard the testimony must either read the record of it or submit their proposed decision to the parties. *See* 2 K. Davis, *Administrative Law Treatise* § 11.02 (1958), stating the prevailing rule to be, even in the absence of the uniform act, that the deciding officer need not have heard the testimony if he has read or considered the evidence. *See also* 2 Am. Jur. 2d *Administrative Law* §§ 435-39 (1962). *See also* 2 F. Cooper, *State Administrative Law*, ch. 13, § 3 (1965). At page 445 the treatise states:

> It has probably never been the law that he who decides must hear. If ever it was, it is no more. This time-honored rubric has now become no more than a nostalgic slogan. In both state and federal agencies, decisions are in fact made by officials who have neither heard the testimony nor read the transcript thereof, and (at least in the absence of specific statutory requirement) the courts do not deem this circumstance to be a sufficient reason for setting aside the agency decision. The courts go no further than to hold that if it can be shown that the official making the decision was unfamiliar with the contents of the record on which he was required to base his decision, then his decision may be set aside.
>
> It is recognized, however, that where decision is based upon an analysis or appraisal of evidentiary facts (as is true in most contested cases) the best guaranty of assur-

ing fair and fully informed decisions is to require that those who make the decision must have intimate knowledge of the contents of the record.

At page 452 the treatise declares:

[T]he state legislatures have recognized that it is not humanly possible in some cases for agency members to hear the testimony or even to read the transcripts in all the cases on which they must pass judgment. The volume of work is too great to permit it. Some substitute must be devised, to attain as fully as possible the objectives that would be achieved if those charged with making decisions could do so on the basis of full personal knowledge of the facts of the cases which they must decide. Most of the statutes take the form of devising some method of substitute procedure.

Discussing the approach of the revised model act, the treatise states, at pages 460-61:

The Revised Model State Act recognizes that the problem of making sure that agency decisions in contested cases shall be fully informed (*i.e.*, made by officials who know the contents of the record, and predicated solely thereon) arises in quite different contexts, which call for different solutions.

There are a few cases in which the agency members actually hear the evidence or read the record. In these cases, the problem is for all practical purposes solved by the very fact that they have done so. The Revised Model Act contains no provisions referable to such situations.

But a problem arises when a majority of the officials who are to render the final decision have not heard the evidence or read the record. It is in these cases that some procedure must be prescribed to make sure that they are given a reasonable opportunity to master the record sufficiently to be able to make a fair, intelligent, and reasonably well-informed decision thereon. The Revised Model Act seeks to attain these ends by providing that in such cases, the decision (if adverse to a party to the proceeding other than the agency itself), shall not be made until a proposal for decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the officials who are to render the decision.

This approach permits agency members to accord such

weight, if any, as they deem proper to the report of the hearing examiner, and to make such use of synopses or staff recommendations as they desire. But when these consultations and studies are completed, and unless a majority of the members have either heard the case or read the record, an opportunity must be afforded the other parties in interest to demonstrate, by exceptions and briefs and oral argument, that the commission and its staff may have overlooked, or neglected to accord proper weight to, stubborn facts or overruling principles of law or policy which control decision.

(Footnote omitted.)

The authors of the treatise observe, at page 462, that the original model state act, with regard to the provision in question, embraces the same theory and philosophy as the revised model act.

█ We cannot conclude, upon the evidence before us, that it was the intent of the commissioners, in changing the words "heard or read the evidence" to "heard the case or read the record" to impose upon the deciding officers, if they are to avoid the necessity of submitting a proposed decision, a lighter duty than was imposed by the 1946 model act. Indeed, if anything, the burden upon the officer is greater under the new act, for the "record" includes many things which are not strictly "evidence." It contains motions, pleadings, proposed findings, exceptions, decisions, reports—all of the proceedings in fact. RCW 34.04.090.

The Court of Appeals appears to have overlooked this fact when it concluded that the legislature would have used the word "record" rather than the word "evidence" if it had intended to refer to a written account of the verbal testimony.

A reading of the entire record was evidently not within the legislative contemplation, but rather a reading of the evidence. The two terms are not synonymous.

RCW 34.04.110 phrases the requirement in the disjunctive—"heard or read." The Court of Appeals construed it in the conjunctive—"heard and read." Considered in the light of the realities of administrative practice and the expressed

intent of the drafters of the act, as well as the authorities which have discussed this subject, we cannot find that the provision is ambiguous. It is unnecessary to serve upon the parties findings, conclusions and proposal for decision if the deciding officials have *either* heard or read the evidence.

This is the correct view of the meaning of the section according to E. Blythe Stason,[2] writing for a symposium on the Model Administrative Procedure Act in 33 Iowa L. Rev. 196, at 206 (1948).

This interpretation of the provision also is consistent with the college's understanding of its duty as evidenced by its rule B12, promulgated as a part of its Policies and Procedures for Tenure and Dismissal, which were developed with faculty cooperation and approval. This rule does not provide for the board's issuance of a proposal for decision. Instead it requires the board to review the record of the hearing and to resubmit the case to the review committee, if it disagrees with its findings and recommendation, and to obtain the benefit of its reconsideration of the matters in question before making a decision to overrule the committee. The apparent purpose of this procedural step is to make sure that the board will have thoroughly explored the matter before overruling the committee.

We are advised by the Attorney General, filing an amicus brief on behalf of all State agencies, that such agencies have consistently interpreted the act as giving to officials who have not heard the testimony but whose responsibility it is to decide a contested case, the option to either read the evidence or to serve their findings and conclusions and proposal for decision upon the parties and give them an opportunity to present exceptions and arguments. The plaintiff points out that this fact is not shown in the record of this case; however, she does not claim that proof exists to the contrary. In any event, we do not rest our decision

[2]A.B., 1913, University of Wisconsin; S.B., 1916, Massachusetts Institute of Technology; J.D., 1912, University of Michigan. Chairman of the Special Committee on the Model State Administrative Procedure Act; Member of the Attorney General's Committee on Administrative Procedure. Dean and Professor of Law, University of Michigan Law School.

upon the administrative construction, but upon the plain meaning of the language contained in the provision.

We also are compelled to disagree with the interpretation which the Court of Appeals placed upon the word "consider," as used in this act. That court was of the opinion that, in order to consider the record, it is necessary for a deciding official to read it. Authority for this proposition is not cited in the opinion or in the plaintiff's brief. Black's Law Dictionary (4th ed. rev. 1968) gives this definition of "consider": "To fix the mind on, with a view to careful examination; to examine; to inspect."

According to *Webster's Third New International Dictionary* (1968), to consider is "to reflect on: think about with a degree of care or caution . . ." Synonyms are reflect, deliberate, ponder.

According to the cases cited in 2 Am. Jur. 2d *Administrative Law* § 439 (1962), the rule that the one who decides must hear by considering and appraising the evidence taken otherwise than in his presence does not preclude practical administrative procedure in obtaining the aid of assistants in the agency. They may prosecute inquiries, take evidence, and sift and analyze the same. The encyclopedia states, at page 249:

> The rule does not in every case require that the person not present at the taking of evidence actually read the record or a transcript. The extent to which an independent study of the evidence in the record is necessary to the required exercise of informed judgment must be left to the wisdom and practical good sense of the agency. The reading of the record and initial consideration of the evidence can be delegated and a report or memorandum of an officer or employee of the agency may be relied upon in place of an independent examination of the testimony by the determining agency, particularly in light of the practical considerations involved and long-continued practice.

(Footnotes omitted.)

It is evident, therefore, that the word "consider" was

used advisedly in RCW 34.04.110 and was not an inadvertent substitute for the word "read."

Does our construction of the statute result in a denial of due process of law? We are convinced that it does not. The plaintiff's citations of authority regarding the right to procedural due process in administrative hearings establish the principle that a person may not be deprived of a protected right unless he is first given notice and an opportunity to be heard. But none of them supports the proposition that a party is entitled to a hearing at every stage of the proceedings. The United States Supreme Court has said, in *Opp Cotton Mills, Inc. v. Administrator*, 312 U.S. 126, 152, 85 L. Ed. 624, 61 S. Ct. 524 (1941):

> The demands of due process do not require a hearing, at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective.

Here, the plaintiff was afforded an opportunity to present evidence and arguments before the review committee, where she was represented by counsel. She was again afforded a hearing before the Board of Trustees, after all of its members had read the evidence and before they made their decision. She is now pursuing her further statutory remedy of judicial review. While she contends that she might have been able to sway the board, had she been given an opportunity to argue before it a second time, she does not point to any argument that could have been made that was not available to her or that was not, in fact, made at the hearing which was held.

The plaintiff has shown no constitutional flaw in the administrative process. The decision of the Court of Appeals is reversed, insofar as it held that the Board of Trustees had failed to comply with the requirements of RCW 34.04.110 and implied that its provisions, if otherwise construed, are unconstitutional. In all other respects, the decision is affirmed.

314

The cause is remanded to the Superior Court with directions to proceed with the review of the order of dismissal.

STAFFORD, C.J., FINLEY, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., and HANNAN, J. Pro Tem., concur.