[No. 9602-8-I. Division One. December 14, 1981.]

CHARLES O. CAUSEY II, ET AL, *Appellants,* v. THE BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT V, *Respondent.*

*Steven Frank* and *Jon Howard Rosen,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *James Porter* and *Steven Recor, Assistants,* for respondent.

SWANSON, J.—In September 1976, Everett Community College hired Charles O. Causey to teach art on a 1–year probationary appointment. A tenure review committee was formed (about 2 months later than required) to evaluate Causey's teaching. However, the committee functioned rather informally. It did not meet as required by the Community College Act of 1967, RCW 28B.50.850–.869. It met as an entire group with Causey only once, in March of 1977. Its membership changed during the next 2 years when Causey was rehired on two more 1–year probationary contracts. In fact, the committee members never formally observed Causey's teaching.

In January of 1979, the committee met to discuss tenure for Causey. Based on evaluations of Causey's teaching, per-

sonal observations, and the declining enrollment in the art department, the committee majority recommended denying tenure.[1] The board of trustees considered the recommendations and evaluations collected in Causey's tenure packet. The board members unanimously voted on March 15, 1979, to deny tenure and to terminate Causey's probationary contract on its June 12, 1979, expiration date.

Causey and his union then sued the board. Both sides moved for summary judgment. The trial court granted the board's motion. Causey and the union have appealed, asserting that as a matter of law, the board could not deny tenure to Causey on account of declining enrollment. They argue that under the tenure act, RCW 28B.50.850–.869, and the 1979 teaching contract, the board had to give primary consideration to Causey's teaching effectiveness in reaching its tenure decision. They also contend that the 1979 contract established a reduction–in–force procedure as the exclusive response to declining enrollment.

■ In reviewing an order for summary judgment, this court engages in the same inquiry as the trial court. *Highline School Dist. 401 v. Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976); *Deacy v. College Life Ins. Co. of America*, 25 Wn. App. 419, 422, 607 P.2d 1239 (1980). Neither party has asserted that there is a dispute as to a material issue of fact. Therefore, we are placed in the same position as the trial court to apply the law to the undisputed facts of this case.

After reviewing the entire record, we conclude that the board of trustees properly terminated Causey's probationary contract because Causey's probationary faculty appointment could be terminated without cause when it expired.[2] RCW 28B.50.851(3). We also conclude that the

---

[1] The committee majority's letters of recommendation prepared for the board of trustees primarily emphasized the declining enrollment in the art department.

[2] The termination of the appointment could not be made for a constitutionally impermissible reason such as race, sex, national origin, or religion. However, Causey has not alleged his termination was based on such an impermissible reason.

board could deny Causey tenure because the 1979 contract reduction–in–force procedure was not the exclusive response available in the event of declining enrollment.

In reaching a tenure decision, the board of trustees does not have to state either the evidence relied on or the reasons for the decision. *See Smith v. Greene*, 86 Wn.2d 363, 369, 545 P.2d 550 (1976). The board alone makes the final tenure decision after giving reasonable consideration to the recommendations of the tenure review committee. RCW 28B.50.856. Even if we assume arguendo that declining enrollment was the only criterion the board used in denying Causey tenure, we cannot conclude that the trial court erred in upholding the denial of tenure.

The 1979 contract reduction–in–force procedure was not the exclusive method to deal with declining enrollment. The board could terminate any probationary appointment on expiration even without cause. RCW 28B.50.851(3). Clearly, the board could also hire or choose not to renew part–time and temporary faculty members in response to enrollment needs. We also conclude that the reduction–in–force procedure applied only to emergency situations which would require layoffs of any academic employees during the terms of their contracts. The reduction–in–force procedure refers to layoffs and lay–off units. We must interpret these words logically to mean that only those academic employees who could expect continued employment (those already under binding contracts) were covered by the reduction–in–force procedure. Mr. Causey's only expectation under his probationary faculty appointment was that he could teach until his contract expired on June 12, 1979. Thus, the reduction–in–force procedure did not cover the nonrenewal and denial of tenure for Causey. Consequently, we agree with the trial court that the board of trustees did not limit, restrict, or bargain away its authority to grant or deny tenure.

We also conclude that the numerous procedural errors committed by Causey's tenure review committee were regrettable; however, such errors could not mandate a

grant of tenure to Causey. *See Smith v. Greene, supra* at 375; *Nzomo v. Vermont State Colleges,* 138 Vt. 73, 411 A.2d 1366 (1980). The board alone had the authority to make final tenure decisions. RCW 28B.50.856. The board properly exercised its authority in making its tenure decision.

The judgment is affirmed.

RINGOLD, A.C.J., and CORBETT, J., concur.

Reconsideration denied January 29, 1982.

Review denied by Supreme Court April 28, 1982.