[No. 4743–II.   Division Two.   January 15, 1982.]

NORTH BEACH EDUCATION ASSOCIATION, *Appellant,* v.
NORTH BEACH SCHOOL DISTRICT No. 64,
*Respondent.*

*Judith A. Lonnquist,* for appellant.

*William A. Coats,* for respondent.

PETRIE, J.—This case presents an appeal from the refusal of the Superior Court for Grays Harbor County to vacate an arbitrator's order and remand the complaint to the arbitrator for further proceedings. The arbitrator dismissed the North Beach Education Association's (NBEA) grievance against the North Beach School District (District) for lack of jurisdiction to enter an award. We hold that the arbitrator had jurisdiction to fashion a remedy (if the grievance was found valid) and therefore could have entered a ruling on the substantive merits of the grievance. Accordingly, we reverse the trial court and remand with instructions that the trial court enter an order directing the arbitrator to hear NBEA's grievance.

Resolution of the issues involved requires essentially an

analysis of the proper relationship between statutorily–authorized and collectively–negotiated arbitration procedures and statutorily–reserved school board powers. A precise framing of the issue is critical to a proper understanding of the case. We view the instant question before us as follows: Does the grant of exclusive decision–making power in a school board under RCW 28A.67.072 to make renewal or nonrenewal decisions concerning provisional teachers preclude arbitration of any grievance concerning procedure preliminary to a final renewal or nonrenewal decision?

We conclude that the school board does possess the exclusive power, not subject to *any* appeal, to decide whether to "nonrenew" a provisional employee. Nevertheless, we also hold that under the fact pattern presented in this case, RCW 28A.67.072 does not preclude arbitration of grievances outside the final nonrenewal decision. The rationale in support of this holding is that although the arbitrator cannot reinstate an employee to full contract status nor impinge upon any other statutory exclusive power of the school board over employment matters, the contract between the parties still leaves discretion to fashion remedies short of reinstatement.

During the school year 1977–78 the parties to this appeal were operating under a mutually–negotiated collective bargaining agreement that included quite extensive evaluation procedures for teachers and a grievance–arbitration provision. In February 1978, Terry Maxwell, a provisional teacher, was placed on probation in accordance with the contract provisions[1] because of adverse teaching evaluations. "Provisional" employees are those in their first year

---

[1]These probation requirements were negotiated in accordance with RCW 28A-.67.065, and were in addition to the minima set forth in the statute. Though the statute does not require a probationary period for a provisional teacher (*see* Attorney General Opinion, Dec. 9, 1977), the contract probationary period was applicable to all District teachers. We do not enter into any determination of whether the District had to afford provisional teachers the protections of RCW 28A.67.065 or whether Maxwell was properly placed on probation.

of teaching as contrasted with continuing or "contract" teachers. In April 1978, NBEA and Maxwell filed a grievance with the District claiming the evaluations were improperly performed and the evaluation procedures improperly followed. The grievance proceeded, unresolved, through the contractual steps starting with Maxwell's school principal up to the school board. While Maxwell's grievance was pending before the school board, she was notified by the superintendent she would not be renewed for the next school year. The superintendent's decision was made pursuant to RCW 28A.67.072.[2] Maxwell and the

---

[2]RCW 28A.67.072 provides:

"Notwithstanding the provisions of RCW 28A.67.070 as now or hereafter amended, every person employed by a school district in a teaching or other non-supervisory certificated position shall be subject to nonrenewal of employment contract as provided in this section during the first year of employment by such district. Employees as defined in this section shall hereinafter be referred to as 'provisional employees'.

"In the event the superintendent of the school district determines that the employment contract of any provisional employee should not be renewed by the district for the next ensuing term such provisional employee shall be notified thereof in writing on or before May 15th preceding the commencement of such school term, which notification shall state the reason or reasons for such determination. Such notice shall be served upon the provisional employee personally, or by certified or registered mail, or by leaving a copy of the notice at the place of his or her usual abode with some person of suitable age and discretion then resident therein. The determination of the superintendent shall be subject to the evaluation requirements of RCW 28A.67.065, as now or hereafter amended.

"Every such provisional employee so notified, at his or her request made in writing and filed with the superintendent of the district within ten days after receiving such notice, shall be given the opportunity to meet informally with the superintendent for the purpose of requesting the superintendent to reconsider his or her decision. Such meeting shall be held no later than ten days following the receipt of such request, and the provisional employee shall be given written notice of the date, time and place of meeting at least three days prior thereto. At such meeting the provisional employee shall be given the opportunity to refute any facts upon which the superintendent's determination was based and to make any argument in support of his or her request for reconsideration.

"Within ten days following the meeting with the provisional employee, the superintendent shall either reinstate the provisional employee or shall submit to the school district board of directors for consideration at its next regular meeting a written report recommending that the employment contract of the provisional employee be nonrenewed and stating the reason or reasons therefor. A copy of such report shall be delivered to the provisional employee at least three days prior

NBEA took both the nonrenewal determination and the grievance to the school board. The board denied both appeals. Thereafter, Maxwell sought no further review and is not a party to this appeal. Only the NBEA pursued the grievance on the improper evaluations to arbitration.[3]

The arbitrator heard the grievance on the merits and, while finding that there were procedural violations concerning Maxwell's evaluation, concluded that under RCW 28A.67.072 he had no jurisdiction to make an award.[4] He found that (1) the statute provided the exclusive means of nonrenewing a provisional teacher and any appeals there-

---

to the scheduled meeting of the board of directors. In taking action upon the recommendation of the superintendent, the board of directors shall consider any written communication which the provisional employee may file with the secretary of the board at any time prior to that meeting.

"The board of directors shall notify the provisional employee in writing of its final decision within ten days following the meeting at which the superintendent's recommendation was considered. The decision of the board of directors to nonrenew the contract of a provisional employee shall be final and not subject to appeal.

"This section applies to any person employed by a school district in a teaching or other nonsupervisory certificated position after June 25, 1976. This section provides the exclusive means for nonrenewing the employment contract of a provisional employee and no other provision of law shall be applicable thereto, including, without limitation, RCW 28A.67.070, and chapter 28A.88 RCW, as now or hereafter amended."

[3]Article XIV Grievance Procedures—Section 1 of the collective bargaining agreement defines "grievant" as "an individual or employee, a group of employees, *or the Association.*" (Italics ours.)

[4]"Article XV of the parties' agreement, [the evaluation procedures] however, also contains provisions pertaining to grievances and appeals from unsatisfactory evaluations which are not authorized by statute, whereby provisional employees can overturn decisions of the Board of Directors not to renew contracts, notwithstanding the complete and exclusive system of appeal legislated.

"The sections of Article XV which are quoted above therefore, can not negate or supplement the explicit system of appeal established by RCW 28A.67.072 which states that it shall be final and exclusive. The insertion of grievance procedures leading to arbitration by the parties, in Article XV with respect to provisional employees was beyond the authority granted by the legislature. Accordingly an arbitrator may not interpose his judgment as to a teacher's competency, for example, before that of the district board of directors." (Decision of Arbitrator, at 18.)

from, and (2) the collective bargaining agreement's provisions which supplemented the statutory procedures could not be enforced.

RCW 28A.67.065 sets forth the minimum criteria for the evaluation of teachers and directs school boards to establish evaluation criteria by bargaining with teachers' representatives in accordance with the Educational Employment Relations Act (RCW 41.59), the teachers' bargaining act. Here the parties did negotiate such additional evaluative criteria into the contract and made the contractual criteria applicable to both provisional and continuing contract teachers. These procedures were quite specific and encompassed nearly one–third of the entire agreement. The problem, as the arbitrator viewed it, was that a grievance over the application of the contract evaluation procedures impinged on the school board's exclusive authority to nonrenew a provisional teacher under RCW 28A.67.072.

RCW 28A.67.072 sets forth the procedures for nonrenewal of provisional employees. It represents a legislative determination to withhold from provisional teachers the fuller due process rights accorded contract teachers under RCW 28A.67.070.[5] Attorney General Opinion, Dec. 9, 1977. Furthermore, RCW 28A.67.072 reserves in the school board *final* authority in employment matters. This finality is emphasized by the clear words of the statute:

> The *decision of the board* of directors to nonrenew the contract of a provisional employee *shall be final* and *not subject* to appeal.
>     . . . This section provides the *exclusive means* for nonrenewing the employment contract of a provisional employee and no other provision of law shall be applicable thereto, including, without limitation, RCW 28A.67-.070, and chapter 28A.88 RCW . . .

(Italics ours.) RCW 28A.67.072.

However, it appears that the decision to "nonrenew" must be made subject to *some* evaluation.

---

[5]The fuller due process rights afforded contract teachers under RCW 28A.67-.070 include nonrenewal only for cause and a hearing to determine if cause exists.

The determination of the superintendent shall be subject to the evaluation requirements of RCW 28A.67.065, . . . RCW 28A.67.072.

We need not enter the murky area of whether the nonrenewal must also be made subject to the contract procedure, or how far RCW 28A.67.065 applies to provisional employees. That question is not squarely before us. *See* Attorney General Opinion, Dec. 9, 1977. We recognize the apparent ambiguity between the two statutes (RCW 28A.67.065 and .072) with which the arbitrator believed he was faced, but we find that an arbitrable matter remained. There does exist a seeming tension between the contract's preference for arbitrability of disputes and statutorily reserved management powers in the District.

Both parties under the collective bargaining agreement contracted to submit a large variety of matters to grievance arbitration. "Grievance" was broadly defined under the contract.

A grievance is an alleged misinterpretation of, misapplication of, or deviation from existing policies, practices, and/or the terms and provisions of this Agreement by the employer.

Article XIV, section 1, Grievance Procedures.

The District contends that NBEA was trying to arbitrate the nonrenewal of Maxwell. NBEA contends it was not appealing the nonrenewal, but only the violations of the evaluation procedures preliminary to nonrenewal. Again, we emphasize that the statutory language of RCW 28A.67.072 clearly expresses that the decision to nonrenew is not arbitrable. However, the broad definition given a "grievance" by the contract extends to misinterpretations and misapplications of the contract. Without invading the arbitrator's exclusive province to interpret the contract, we note that the substance of NBEA's grievance[6] could fall under the

---

[6]The Demand for Arbitration filed by NBEA lists the nature of the dispute as: "The District has violated the Collective Bargaining Agreement and the rights of the employee by its actions relating to Evaluation, Probation and Non-renewal."

heading of either a misinterpretation or misapplication of the contract.

■ One of the strongest reasons for providing an arbitration procedure is to give a neutral third party the power to interpret the language of the contract where the parties themselves differ. *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960).

■ We resolve the tension that exists between the nonrenewal statute and the parties' collective bargaining agreement by concluding that a grievance that falls short of direct conflict with the nonrenewal statute may be heard and resolved by the arbitrator. A grievance seeking arbitration of procedural violations and seeking clarification of the contract provisions on evaluation is the type that an arbitrator could hear.

Other jurisdictions have found that grievances as to procedural violations survive even where the school board is the final arbiter as to employment of teachers. *See School Comm. v. Tyman,* 372 Mass. 106, 360 N.E.2d 877 (1977); *Central Point School Dist. 6 v. Employment Relations Bd.,* 27 Or. App. 285, 555 P.2d 1269 (1976). We find the reasoning of *Tyman* particularly persuasive:

> Although a school committee may not surrender its authority to make tenure decisions, there is no reason why a school committee may not bind itself to follow certain procedures precedent to the making of any such decision. . . .
>
> . . . The *agreement to follow certain procedures* preliminary to exercising its right to decide a tenure question, and to permit arbitration of a claim that it has failed to follow those procedures, *does not impinge on a school committee's right to make the ultimate tenure decision. If a violation is found by the arbitrator, he may not grant tenure to the teacher, but he may fashion a remedy which falls short of intruding into the school committee's exclusive domain.* Some violations of evaluation procedures may be trivial and not justify any relief. Not all violations of a teacher's rights, even constitutional rights, will justify reinstatement. The arbitrator

might direct merely that the omitted procedures be followed and the teacher's record corrected as appears appropriate. However, in other cases, the failure to follow evaluation procedures may be shown to have so prejudiced a teacher's position that more substantial relief may be in order. *It would be premature in this case to announce any limits on the scope of an arbitrator's award* in such a case, provided it does not award tenure to the teacher.

(Citations omitted. Italics ours.) *School Comm. v. Tyman, supra* at 113–14.

The above reasoning of the Massachusetts court is sound, and we choose to adopt it to our unique statutory nonrenewal scheme as it applies to provisional teachers. The *Tyman* and *Central Point* decisions basically treat the actions leading up to the decision to nonrenew as severable and permit arbitration of those preliminary steps not in the exclusive purview of the school board. We believe such a construction is in accord with the Washington statute because it is faithful to the strong legislative preference for bargaining embodied in the Educational Employment Relations Act (RCW 41.59). *See generally Anderson v. Morris,* 87 Wn.2d 706, 716, 558 P.2d 155 (1976).

Our analysis resolves the arbitrator's concern that he had no power to enter an award. The arbitrator must fashion a remedy appropriate with the seriousness of the contractual violation and the circumstances. Reinstatement of the employee to full contract status is not an available remedy. We, like the Massachusetts court, decline to limit the remedies available to the arbitrator,[7] but note that his limits are only those of his creativity subject to the bounds of RCW 28A.67.072 (or any other statute that impinges upon

---

[7]Initially, we note that in the Demand for Arbitration remedies sought included: ordering the District to adhere to the contract, the purging of documents, and costs be granted to the NBEA. Additionally, these above remedies were suggested at oral argument. An offer of employment, on a provisional status was also mentioned at oral argument. Without sanctioning any of these remedies, we note they could be considered by the arbitrator in fashioning a remedy that fits the instant situation. The issue of proper remedies is not before us.

an exclusive power in the school board over employment matters) and the negotiated contract.

This interpretation of a contractual preference for arbitrability and a statute with exclusive decision–making power most closely approximates legislative intent and resolves the tension between collective bargaining and reserved management power.

We reverse and remand with instructions that the arbitrator entertain the grievance.

PETRICH, A.C.J., and PEARSON, J., concur.