[No. 5163–3–III.   Division Three.   December 1, 1983.]

DONALD EYRE, *Appellant,* v. BIG BEND COMMUNITY
COLLEGE, ET AL, *Respondents.*

*Gerald J. Moberg, Ralph Kenison,* and *Ries & Kenison,*
for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Mark
Cassidy, Assistant,* for respondents.

*Symone B. Scales,* amicus curiae on behalf of Washington Education Association.

GREEN, A.C.J.—This appeal involves the question of

whether an arbitrator, who finds a community college has violated its own regulations and a collective bargaining agreement relating to the evaluation of the performance of a probationary faculty member, has authority to provisionally reinstate such employee for an additional year to require compliance with those procedures.

Mr. Eyre was a probationary flight instructor at Big Bend Community College (BBCC). By statute, a faculty member is on probation for the first 3 years of employment; at the end of that time the appointing authority decides whether to award tenure. RCW 28B.50.852. Regulations create a tenure review committee and establish specific procedures for evaluating, assisting and making recommendations to the appointing authority concerning probationary employees. WAC 132R–128–010 through –130. Those recommendations are considered by the board in determining tenure. A collective bargaining agreement between BBCC and the faculty association incorporates these regulations.

During the first 2 years of Mr. Eyre's employment, the aviation tenure review committee rated him satisfactory and recommended he continue in his teaching position. However, during his third year the committee recommended to the board of trustees that he not be awarded tenure and his employment be terminated at the end of the school year. No reason was given. The trustees apparently accepted the committee's recommendation and denied tenure to Mr. Eyre which, in effect, terminated his employment.

Mr. Eyre filed a grievance in compliance with the collective bargaining agreement (CBA), which provided for arbitration at the final stage. BBCC refused to arbitrate. Mr. Eyre then obtained a court order compelling BBCC to submit the issue of whether the tenure review board had complied with the required evaluation procedures to arbitration.[1] Following a hearing, the arbitrator found non-

---

[1] WAC 132R–128–040 provides:

compliance with the evaluation procedures and that the criticisms of Mr. Eyre by the committee were not supported by substantial, probative evidence. He ordered BBCC to

"Review committee evaluation procedures. (1) Each review committee shall be required to conduct an evaluation of each full-time probationary faculty appointee assigned to such review committee by the president and render reports required by this rule to the president, the probationary faculty appointee and to the appointing authority during the regular college year.

"(2) The review committee and the probationer shall understand that the purpose of the evaluation is twofold; namely to guide the probationer so that his effectiveness in his faculty appointment shall be upgraded, and to provide a simple record of his performance during each quarter of his probationary appointment."

WAC 132R–128–050 provides:

"Review committee evaluation standards. Each review committee shall consider the following standards in the course of evaluating the effectiveness of each full-time probationer's effectiveness in his appointment:

"(1) Initial employment is a first favorable indication that the probationer should be permanently employed.

"(2) The probationer's instructional skills.

"(3) The probationer's relationship with students.

"(4) The probationer's relationship with the faculty.

"(5) The probationer's relationship with the administration.

"(6) The probationer's knowledge of the subject matter he is charged with teaching.

"(7) The probationer's action toward professional improvement; e.g., in–service training, additional course work, reading, travel.

"(8) The probationer's adherence to appropriate guides and general objectives."

WAC 132R–128–060(4) provides:

"If in the course of its evaluation report, the review committee states that the probationer is performing unsatisfactorily in whole or in part, it shall attempt to develop a program with the probationer that will be devised to improve such deficiencies."

WAC 132R–128–070 provides:

"Recommendations regarding tenure. (1) The review committee's recommendations shall be transmitted to the college president. Copies of the recommendations shall be sent to the probationer, his division chairman and the appropriate dean.

"(2) Pursuant to RCW 28B.50.856, the probationary faculty appointment period shall be one of continuing evaluation of a probationer by the review committee. The evaluation process shall place primary importance upon the probationer's effectiveness in his appointment. The review committee shall periodically advise each probationer, in writing, of his progress during the probationary period and receive the probationer's written knowledge thereof. The review committee shall, as per subsection (3) below, make appropriate recommendations to the appointing authority through the president."

reinstate Mr. Eyre to *probationary* status for 1 year. During that time, the tenure review committee was to evaluate and counsel Mr. Eyre and make appropriate recommendations to the board of trustees who could then make a decision regarding tenure.

Thereafter, BBCC moved in superior court for an order vacating the arbitration award. This motion was granted on the ground the arbitrator exceeded his authority when he set aside the tenure decision of the board and granted probationary status to Mr. Eyre for an additional year. The matter was remanded to the arbitrator for revision of his determination. Mr. Eyre appeals.

He contends an arbitrator may fashion any remedy short of *granting* tenure. He argues that otherwise an employer could ignore the statutory and contractual obligations for tenure evaluation without facing any effective sanctions. On the other hand, BBCC contends RCW 28B.50.850–.869 vests in the board of trustees the exclusive discretionary authority to decide whether to renew academic employees. It argues the arbitrator's award not only violated state law, but exceeded the scope of the arbitrator's authority under the CBA and the court order compelling arbitration. We disagree with BBCC.

It is true the final decision regarding tenure rests with the board of trustees and, therefore, reinstatement to full contract status is not a remedy available to an arbitrator. RCW 28B.50.856; *North Beach Educ. Ass'n v. North Beach Sch. Dist. 64*, 31 Wn. App. 77, 85, 639 P.2d 821 (1982). However, an arbitrator may fashion a remedy that does not impinge upon the exclusive power of the board. *North Beach*, at 85. *North Beach* involved a provisional teacher in a secondary school who was not renewed because of teaching deficiencies. A grievance was filed and eventually heard by an arbitrator. He found evaluation procedures contained in a collective bargaining agreement were violated and, therefore, there was merit to the grievance. Notwithstanding, the arbitrator concluded he did not have jurisdiction to make an award because a grievance concern-

ing evaluation procedures impinged on the school board's exclusive authority regarding renewal of a probationary teacher. *North Beach,* at 81. On appeal, the court disagreed, stating at pages 85–86:

> Our analysis resolves the arbitrator's concern that he had no power to enter an award. *The arbitrator must fashion a remedy appropriate with the seriousness of the contractual violation and the circumstances.* Reinstatement of the employee to full contract status is not an available remedy. We . . . decline to limit the remedies available to the arbitrator,[7] but note that his limits are only those of his creativity subject to the bounds of RCW 28A.67.072 (or any other statute that impinges upon an exclusive power in the school board over employment matters) and the negotiated contract.
>
> [7]Initially, we note that in the Demand for Arbitration remedies sought included: ordering the District to adhere to the contract, the purging of documents, and costs be granted to the NBEA. Additionally, these above remedies were suggested at oral argument. An offer of employment, on a provisional status was also mentioned at oral argument. Without sanctioning any of these remedies, we note they could be considered by the arbitrator in fashioning a remedy that fits the instant situation. The issue of proper remedies is not before us.

(Italics ours.) This decision guides our conclusion in this case.

Here the arbitrator temporarily reinstated Mr. Eyre for 1 year pending compliance with the evaluation procedures contained in the regulations and the CBA. This order in no way impinged upon the board's exclusive authority to ultimately grant or deny tenure. It only required BBCC to comply with its own regulations and the CBA. Perforce, it was the only meaningful remedy available. To hold temporary reinstatement is beyond the scope of the arbitrator's authority in effect would allow BBCC to breach the CBA and the regulations without penalty and leave Mr. Eyre without a remedy. This we decline to do. Thus, we find the arbitrator fashioned a remedy "appropriate with the seriousness of the contractual violation and the circumstances",

*North Beach,* at 85, and the court erred in setting it aside.

Other jurisdictions faced with similar circumstances have consistently held reinstatement of a teacher to probationary status until evaluation procedures have been complied with is within the scope of the arbitrator's authority. *See Lisbon Sch. Comm. v. Lisbon Educ. Ass'n,* 438 A.2d 239 (Me. 1981); *School Comm. v. Korbut,* 373 Mass. 788, 369 N.E.2d 1148 (1977); *School Comm. v. Tyman,* 372 Mass. 106, 360 N.E.2d 877 (1977); *United Liverpool Faculty Ass'n v. Board of Educ.,* 52 N.Y.2d 1038, 420 N.E.2d 386, 438 N.Y.S.2d 505 (1981); *North Syracuse Cent. Sch. Dist. v. North Syracuse Educ. Ass'n,* 45 N.Y.2d 195, 379 N.E.2d 1193, 408 N.Y.S.2d 64 (1978); *Board of Educ. v. Bellmore-Merrick United Secondary Teachers, Inc.,* 39 N.Y.2d 167, 347 N.E.2d 603, 383 N.Y.S.2d 242 (1976); *Cohoes City Sch. Dist. v. Cohoes Teachers Ass'n,* 40 N.Y.2d 774, 358 N.E.2d 878, 390 N.Y.S.2d 53 (1976); *Northeast Cent. Sch. Dist. v. Webutuck Teachers Ass'n,* 71 A.D.2d 673, 418 N.Y.S.2d 952 (1979); *Board of Educ. v. Yonkers Fed'n of Teachers,* 58 A.D.2d 626, 395 N.Y.S.2d 690 (1977); *Board of Educ. v. Chautauqua Cent. Sch. Teachers Ass'n,* 41 A.D.2d 47, 341 N.Y.S.2d 690 (1973); *Central Point Sch. Dist. 6 v. Employment Relations Bd.,* 27 Or. App. 285, 555 P.2d 1269 (1976); *Fries v. Wessington Sch. Dist. 2–4,* 307 N.W.2d 875 (S.D. 1981). *But see Illinois Educ. Ass'n Local Comm. High Sch. Dist. 218 v. Board of Educ.,* 62 Ill. 2d 127, 340 N.E.2d 7 (1975).

▇ BBCC argues the arbitrator's award of an additional year of probation violates RCW 28B.50.852:

> The appointing authority shall promulgate rules and regulations implementing RCW 28B.50.850 through 28B.50.869 and shall provide for the award of faculty tenure following a probationary period not to exceed three consecutive regular college years, excluding summer quarter . . .

RCW 28B.50.850 states the purpose of the faculty tenure system is to protect "the concepts of faculty employment rights and faculty involvement in the protection of those

rights in the state system of community colleges." It is evident the provision limiting the probationary period to 3 years was to prevent delay in making a tenure decision, *i.e.*, so a faculty member would know whether or not the position was to be permanent. Since the limitation was intended for the benefit of a faculty member, BBCC should not be permitted to violate its own evaluation procedures and then use the 3–year limitation to deny a remedy to Mr. Eyre.

BBCC's reliance upon *Causey v. Board of Trustees*, 30 Wn. App. 649, 638 P.2d 98 (1981) and *Smith v. Greene*, 86 Wn.2d 363, 545 P.2d 550 (1976) is misplaced. Those decisions concern the exclusive authority of the board to decide the question of tenure. They, in effect, hold that probationary employees have no property interest in their subjective expectancy of tenure and that the board may refuse to grant tenure without reducing its reasons to writing. Neither decision addresses the issue in this case. Here we are concerned with the authority of an arbitrator to fashion a remedy for violation of a collective bargaining agreement short of impinging upon the exclusive authority of the board. *North Beach* governs the answer to this question. We merely hold that the evaluation procedures promulgated by the institution, and in this case incorporated into a collective bargaining agreement, must be followed prior to the board's action on a tenure question. Thereafter, the board, having a procedurally correct evaluation committee recommendation, may determine to grant or deny tenure on whatever basis it deems appropriate.

Reversed for implementation of the arbitrator's decision.

McINTURFF, J., concurs.

EDGERTON, J.* (dissenting)—I dissent. The trial judge correctly decided that the arbitrator did not have authority to order reinstatement of Donald Eyre subsequent to the

---

*Judge Ralph P. Edgerton is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

board of trustees' decision denying Mr. Eyre tenure. His judgment should be affirmed. The majority opinion which would reverse that decision relies on *North Beach Educ. Ass'n v. North Beach Sch. Dist. 64,* 31 Wn. App. 77, 639 P.2d 821 (1982) to support that conclusion. The case is distinguishable from this one.

It deals with arbitration proceedings on behalf of a provisional schoolteacher employed under RCW 28A.67.072. In that case the court announced that an arbitrator may have discretion to fashion remedies for proved grievances of a provisional schoolteacher concerning procedure preliminary to a final renewal or nonrenewal decision, but it expressly restricts that exercise of discretion. It holds that remedy must be short of reinstatement and must not impinge on any other statutory exclusive power of the school board over employment matters. This case, however, is governed by RCW 28B.50.852, which provides:

> The appointing authority . . . shall provide for the award of faculty tenure following a probationary period *not to exceed three consecutive regular college years,* excluding summer quarter . . .

(Italics mine.) Mr. Eyre was employed under this latter statute and his employment was governed by it. Thus, his term as a teacher automatically terminated if tenure was not given him. This was not necessarily so for the teacher in the *North Beach* case, for the statute under which she was hired provided in its first paragraph:

> [E]very person employed by a school district in a teaching or other nonsupervisory certificated position shall be subject to nonrenewal of employment contract as provided in this section during the first year of employment by such district. Employees as defined in this section shall hereinafter be referred to as "provisional employees".

RCW 28A.67.072. So, by the terms of that statute, provisional employment is not limited to a specific period of time. RCW 28B.50.852, on the contrary, does expressly limit the probationary period to a term not to exceed 3

consecutive regular college years.

That such is the case is noted in *Smith v. Greene,* 86 Wn.2d 363, 545 P.2d 550 (1976). There, the court stated at page 367:

> Since under RCW 28B.50.852 and 28B.50.856 a probationary appointment does not continue beyond 3 years, at which time the trustees make the "final decision" on tenure (*cf. Bowing v. Board of Trustees,* 85 Wn.2d 300, 304, 534 P.2d 1365 (1975)), any expectancy of tenure is unreasonable. Appellant's "faculty appointment for a designated period of time" was subject to termination *"without cause* upon expiration of the probationer's terms of employment." (Italics ours.) RCW 28B.50-.851(3). Under the terms of his third 1–year contract with Community College District No. 17, appellant's appointment ended in June 1974.

(Footnote omitted.)

Also, the cases cited from other jurisdictions in support of the opinion above do not treat the precise question here present and so are not apposite. While they approve an arbitrator's "fashioning a remedy" in some cases, they deal with different factual situations which do not involve a statute such as the Washington provision here in question. If the tenure review committee failed to comply with article 21 of Mr. Eyre's employment contract, violation was contractual and apart from the statutory authority of the trustees. If a remedy is called for, it must not be by abrogating the statute. If, under the contract and the law, there is no remedy available suitable to the situation, it is up to the Legislature to create one. Neither the arbitrator nor the court should invent a remedy that contravenes statutory law. Corrective measures are a legislative function, not a judicial one.

RCW 28B.50.856 unequivocally gives the power to the board of trustees, the appointing authority, to grant or deny tenure, to order or refuse renewal of a teaching employment contract. It provides:

> The probationary faculty appointment period shall be one of continuing evaluation of a probationer by a review

committee. The evaluation process shall place primary importance upon the probationer's effectiveness in his appointment. The review committee shall periodically advise each probationer, in writing, of his progress during the probationary period and receive the probationer's written acknowledgment thereof. The review committee shall at appropriate times make recommendations to the appointing authority as to whether tenure should or should not be granted to individual probationers: *Provided,* That the final decision to award or withhold tenure shall rest with the appointing authority, after it has given reasonable consideration to the recommendations of the review committee.

Mr. Eyre's employment contract expressly reserves to the board its statutory authority. Article 3 of that contract provides:

A. The board, on its own behalf and behalf of the public and the appointing authority, hereby retains and reserves unto itself all power, right, authority, duties, and responsibilities conferred upon and vested in it by the laws and constitution of the State of Washington and of the United States, including, but without limiting, the generality of the following right:

. . .

2. To hire all employees and, subject to the provisions of law, to determine their qualifications and the conditions for their continued employment, or their dismissal or demotion;

The fact the arbitrator denied he overreached and usurped the board's authority and function when he restored Mr. Eyre to his job for a year, overruling the board's denial of tenure, does not make it so, for that is exactly what he did. The arbitrator seems to base his ruling on his conclusion that Mr. Eyre did not receive coaching or assistance from the evaluation committee to overcome such deficiencies it may have considered he had. If so, neither did he seek the help not given him. It would appear that he might have slept on his rights. The fact is he was evaluated each year and, according to the arbitrator, was given a satisfactory rating in all eight categories used for grading a teacher's proficiency. However, despite such passing marks, the

board had the power to deny tenure, and this it did.

Mr. Eyre presented his complaint to the board. The letter of its chairman, Dr. DeVries, shows that this was done and his complaints were considered by the board.[2] When, in pursuance of the grievance procedures under his employment contract, article 27(f), Mr. Eyre met with the board in step three, his record, letters, and an oral presentation were given the board. Notwithstanding this, the board decided not to renew Mr. Eyre's contract. It gave consideration to the evaluation reports and to claimant's case for renewal and came up with a negative response. This it could do.

Rather than *North Beach,* it is *Causey v. Board of Trustees,* 30 Wn. App. 649, 638 P.2d 98 (1981) which controls here. There, the court said at page 652:

> In reaching a tenure decision, the board of trustees does not have to state either the evidence relied on or the reasons for the decision. *See Smith v. Greene,* 86 Wn.2d 363, 369, 545 P.2d 550 (1976). The board alone makes the final tenure decision after giving reasonable consideration to the recommendations of the tenure review committee. RCW 28B.50.856.

---

[2]The letter further provides: "Had the Board determined that the Employment contract and Negotiated Policies were not properly applied in your particular situation, the Board may have considered the matter grievable and subject to Article XXVII, Grievance Procedure in the Employment Contract and Negotiated Policies.

"However, after giving due consideration to the record, your letters, and oral presentation during the Board's executive session, the Board unanimously has concluded, (1) that no irregularities occurred in the application of your tenure review procedures, and (2) that all requirements under Article XXI and WAC 231R–128, 010–130 were properly met.

"Therefore, based on its consideration of the record, it is the Board's determination that the Employment Contract and Negotiated Policies were properly applied and followed in your particular situation. It is the Board's conclusion that tenure review procedures which culminated in the Board's denial of tenure for you, were conducted in a proper and regular manner and that no evidence has been presented which would lead the board to conclude that those procedures were not followed or misapplied."

Here, the board met the responsibility imposed upon it by law and decided not to grant tenure. It likewise determined the facts did not disclose a grievance and accordingly there should be no step four arbitration. Mr. Eyre then brought suit to compel arbitration and the trial court decided:

> The legal issue presented for decision is not whether the Board's decision is correct, but rather whether the tenure review board complied with the requirements of Article XXI. Mr. Eyre contended there were "irregularities" and that the process was not "correctly and fairly applied" to him. The Board found to the contrary.

The trial judge held the purpose of article 27 in the contract is to require a procedure to determine the merits of opposite contentions involving application of the contract. However, in directing arbitration, he restricted the arbitrator's consideration and decision to the sole issue of the arbitrability of whether the tenure review board complied with article 21. Excluded from his consideration was the question of the board's ultimate denial of tenure. When the arbitrator disregarded the court's order and violated it by exceeding his lawful powers, the board again affirmed its position that tenure should be denied by seeking an order setting aside the arbitrator's decision. The trial judge set aside the arbitrator's ruling, holding that the arbitrator had grossly exceeded his jurisdiction and that the board had the sole and exclusive right to decide whom it would hire. From that decision, Mr. Eyre appealed, and again the board, by defending against the appeal, reiterated its position that its denial of tenure should stand. Moreover, the arbitrator's gratuitous, unsubstantiated attack on the board as being made up of unqualified personnel dealing with subjects unfamiliar to them is not a proper basis for the arbitrator's decision. Nor is his statement that "[t]he Board invariably rubber stamps the recommendations of the Committee" (the faculty review committee). Even if these things were true, the board, under the law, would still have the authority to make the decision of nonrenewal that it did and the

166

arbitrator could not lawfully interfere with its exercise of that power.